WILLIAM ROBINSON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 25, 1895.*

1. EVIDENCE—*confession obtained under promise of immunity not competent.* A confession made orally to a sheriff after a written statement had been made under a promise of immunity from prosecution, which had not been withdrawn and which the accused relied upon, cannot be admitted in evidence against him.

2. SAME—*what influence to obtain confession will prevent its use as evidence.* Any degree of influence exerted in obtaining a confession by any person having authority over the charge against a prisoner or over his person, will prevent its use as evidence against him.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. JOHN J. GLENN, Judge, presiding.

GRIER & STEWART, for plaintiff in error:

Verbal confessions of guilt are to be received with great caution. 1 Greenleaf on Evidence, secs. 214, 219, 220, 222.

The onus of proving that the offered confession was not made in consequence of an improper inducement is on the prosecution. 2 Best on Evidence, sec. 557.

In 1 Phillips on Evidence (5th Am. ed. pp. 545-552,) the rule is laid down that a promise of benefit or favor, or threat or intimation of disfavor, connected with the subject of the charge, held out by a person having authority in the matter, will be sufficient to exclude a confession made in consequence of such inducement, either of hope or fear. In Starkie on Evidence (p. 36) it is said: "A confession can never be received in evidence where the defendant has been influenced by any threat or promise." In Roscoe on Criminal Evidence (p. 39) it is said that a confession is not admissible in evidence unless it was made freely and voluntarily, and not under the influence of promises or threats. The above rule of the text books has always been regarded as the law in this

State.    *Gates* v. *People*, 14 Ill. 433;    *Miller* v. *People*, 39 id. 458;    *Austine* v. *People*, 51 id. 236.

MAURICE T. MOLONEY, Attorney General, T. J. SCO-FIELD and M. L. NEWELL, of counsel, SAMUEL RICHOL-SON, and GEORGE E. BACON, for the People:

In determining whether a confession be admissible or not, the only proper question is whether the inducement held out to the defendant is calculated to make his confession an untrue one.    3 Russell on Crimes, (9th Am. ed.) 367; 3 Am. & Eng. Ency. of Law, 451.

The law seems settled that a confession is not involuntary merely because it appears to have been caused by the exhortations of a person in authority to make it as a matter of religious duty, or by an inducement collateral to the proceeding, or by inducements held out by a person not in authority.    Stephen's Digest of Evidence, (May's ed.) 72; 3 Am. & Eng. Ency. of Law, 451.

It is a mistaken notion that evidence of confessions obtained by promises or threats is to be rejected from regard to public faith.    Confessions are received in evidence or rejected as inadmissible under a consideration whether they are or are not entitled to credit, and if made under inducements, such inducements must be made by persons in authority.    3 Am. & Eng. Ency. of Law, 456, and cases cited.

Mere suggestions or advice to an accused to confess, or even solemn adjurations to do so, by one holding no official position, will not render a confession inadmissible. *State* v. *Fredericks*, 85 Mo. 145.

Mr. JUSTICE BAKER delivered the opinion of the court:

In January, 1894, the barn of one John Gabby was burglarized and certain harness and other property stolen therefrom.    At the May term, 1895, of the Warren circuit court, William Robinson, the plaintiff in error, was indicted for the offense, and a jury trial resulted in his conviction, and he was sentenced to the penitentiary for

the term of one year.  The only incriminating evidence against him was a certain alleged confession made by him to the State's attorney of the county, and testified to by A. B. Holliday, a police officer, and this testimony was admitted in evidence over his objections and exceptions.

The confession in question was obtained under, substantially, these circumstances:  About the last of April or first of May, 1895, it was suspected by the State's attorney, by said Holliday, and by Pershin, a deputy sheriff, that plaintiff in error and certain other persons had committed the crime, and they procured the arrest of plaintiff in error, who was then sick in bed, and had him placed in the custody of an officer.  The State's attorney induced Samuel Robinson, a brother of plaintiff in error, to procure from plaintiff in error a written statement of the supposed facts of the transaction, promising him that plaintiff in error should not be prosecuted if he would tell everything he knew about the matter, and that he would not use such written statement in evidence against him.  These promises were communicated by Samuel to his brother.  Samuel then took down, in writing, the statement made by plaintiff in error, and there was placed at the head of the statement a provision that it was not to be used in evidence.  The State's attorney was not satisfied with this written statement, and expressed a wish to have a personal interview with the plaintiff in error, so that he "could draw out what he was after."  Samuel arranged for the interview, telling his brother that what he told the State's attornery "would be with the understanding that it should not be brought up against him in court."  The State's attorney called Holliday in to hear the conversation with the prisoner, and it is the conversation that then took place that was introduced in evidence.  It seems that upon the prisoner being taken to the office of the State's attorney he immediately began making his statement, and that after he had finished making it the State's attorney told him that

if he would go before the grand jury and testify to what
he had just said, and tell the same story on the trial of
the case, he should not be punished, and the prisoner
agreed to do so, but afterwards refused to testify against
the others charged with the offense.

The matter of this latter arrangement is of no impor-
tance in the decision of the question now before us. The
confession or admission that was introduced in evidence
had been fully made and completed before the making
of such arrangement, and, as matter of course, was not
induced thereby, and there is no occasion for settling the
conflict between the testimony of Samuel Robinson and
the State's attorney as to inducements being held out
and promises made in the conversation that occurred
between them after the written statement had been ob-
tained and that led up to the personal interview between
the State's attorney and the prisoner. The latter testi-
fies: "I had a conversation with the State's attorney and
Mr. Holliday at the State's attorney's office. I was told
to go in there and make a statement, and anything I said
would not be brought in evidence against me. That is
the way I came to make it. My brother, Samuel, told me
that." As we understand the testimony of the State's
attorney he does not deny the inducements alleged to
have been held out and the promises alleged to have
been made prior to the time the written statement was
procured, but that he merely denies having made the sim-
ilar promises that Samuel Robinson testifies were made
subsequently thereto and prior to the personal interview
between the State's attorney and the prisoner. The
former constituted Samuel Robinson his agent to com-
municate the inducements and promises to the prisoner,
and they were so communicated. The written statement
was thereby induced. The promises and inducements
were not afterwards withdrawn. The surrounding cir-
cumstances and the direct evidence clearly indicate that
the subsequent oral statement was made by the prisoner

with the understanding that the inducements offered and promises made in the first instance applied as well to the oral as to the prior written statement, and the evidence shows that the police officer and the deputy sheriff so understood it. Holliday testifies: "I understood that Robinson was to tell his story and he was to be indemnified,—was not to be prosecuted if he would tell his story. That was the fact as I undersood it. I understood he was telling what he told under that sort of a promise, but nothing was said. I understood he was telling under a promise of that kind, because I had talked with the State's attorney. All I know about the arrangement is what I was told by the State's attorney. He told me about the previous arrangement." Pershin testifies: "The understanding I had was, that any evidence he would give would not be used in court. Had that understanding at time written statement was shown me. The substance of what the State's attorney said to me was, that any statement he should make would not be used as evidence against him in court. I don't know that it had particular reference to the written statement. The talk with the State's attorney was at different times."

The rule is, that a confession can never be received in evidence when the prisoner has been influenced by any threat or promise, for the reason that the law cannot measure the force of the influence used or decide upon its effect on the mind of the prisoner, and therefore excludes it if any degree of influence has been exerted by any person having authority over the charge against the prisoner or over his person. (*Austine* v. *People*, 51 Ill. 236; 1 Greenleaf on Evidence, secs. 219, 222; Starkie on Evidence, 36.) *Bartley* v. *People*, 156 Ill. 234, does not establish any different rule. We there said that the confession becomes incompetent whenever any degree of influence has been exerted, because the law presumes that it was prompted by that influence. That case is plainly distinguishable from this. There were there facts to show that the con-

fession was voluntarily made.   There the defendant had not been arrested or even publicly accused of the crime, and he, of his own accord, sought the opportunity to talk with the prosecuting witness in regard to the crime, and with the manifest intention of making a confession and promising to return the stolen money.   Here, on the other hand, the confession and the implication of others in the commission of the crime were clearly induced by hope and the promise that the prosecution against him should be dropped.

It was error to admit the confession in evidence.   For that error the judgment is reversed.   The cause is remanded.

*Reversed and remanded.*