(No. 19727.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AZAR HOLICK, Plaintiff in Error.

*Opinion filed December 20, 1929.*

334

GOLAN & HALL, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE DIETZ delivered the opinion of the court:

The plaintiff in error was indicted jointly with Albert Hiblonsky and Hyman Siegal, in the criminal court of Cook county, for the murder of Anthony Banas. He entered a plea of not guilty and was tried separately. The jury returned a verdict finding him guilty and fixing his punishment at life imprisonment in the penitentiary. His motions for a new trial and in arrest of judgment were overruled and he was sentenced accordingly. The case is brought here for review by writ of error.

On November 27, 1926, the deceased was employed in a butcher shop on Archer avenue, in the city of Chicago,

which was owned and operated by Walter Rolinskas. Shortly after eight o'clock on the evening of that day a stranger entered the butcher shop and sought to make a purchase from the deceased. He was followed immediately by a second stranger with a handkerchief covering his face, who drew a gun and ordered Rolinskas into the ice-box. The deceased ran toward the rear of the shop. The first stranger fired two shots in the direction of the deceased. Hurriedly leaving by the front door the strangers made their escape in an automobile. Both shots struck the deceased, resulting in wounds of which he died on the day following. Almost a year later, and on the evening of November 21, 1927, the plaintiff in error was arrested at his home by police officers, who took him to the detective bureau. He was sick at the time and in a weakened condition. Until a week prior thereto he had been in bed for three months, continuously, with a broken jaw and a couple of fractured ribs, from which he was still suffering. Following his arrest he was kept in the custody of police officers and in a cell at the bureau until November 28 following, when he was taken to the county jail. During that time he signed an alleged written confession, in which he implicated Hiblonsky, Siegal and himself in the commission of the crime. Except for the testimony of Rolinskas and a police officer as to certain verbal admissions of the plaintiff in error made at the same time the alleged confession is the only evidence which in any way connects him with the crime.

The plaintiff in error is a laborer, twenty-seven years of age. He lived with his mother, with whom he had always resided, except for a period of three years and three months following 1917, when he was in the military service. He testified in his own behalf. He said that he did not know Siegal and that he did not get acquainted with Hiblonsky until long after November 27, 1926, and denied that he had anything to do with the commission of the

crime. He testified that he was not in Chicago but in Gary, Indiana, on November 25, 26, 27 and 28, 1926, with his mother and sister, visiting at the home of Eva Lamitz and Pauline Lamitz, by all of whom he was corroborated. Hiblonsky and Siegal were called as witnesses on behalf of the plaintiff in error, but each refused to testify on the ground that his testimony might incriminate him.

It is first contended by the plaintiff in error that the court erred in admitting the alleged written confession. It is urged that the evidence does not show that it was made voluntarily. A preliminary hearing on this issue was had before the court. On such issue the burden of proof is upon the prosecution. (*People* v. *Frugoli,* 334 Ill. 324; *People* v. *Spranger,* 314 id. 602.) A witness for the prosecution testified that he was one of the police officers who made the arrest; that the statement which is claimed to be the confession was made and typewritten in his presence and in the presence of four other police officers, a stenographer and the plaintiff in error, between 3:00 and 4:00 in the morning following the arrest; that it was then read to and signed by the plaintiff in error; that no inducement, threat or promise was made to procure it; that no one twisted the arms of the plaintiff in error; that witness saw no marks on his person and that they did not book him until three days after he was arrested. This was all of his testimony and all of the evidence offered by the prosecution.

The plaintiff in error testified that at the time of his arrest he was sick and in a weakened condition; that until a week prior thereto he had been in bed, continuously, for three months with a broken jaw and a couple of fractured ribs, from which he was still suffering; that he told this to the police officers and they told him that they knew it; that he did not sign the alleged confession until the second night after his arrest; that during all of that time he was under the constant surveillance of a number of police officers, who questioned him continuously, except for infrequent half-

hour intervals when he was kept in a cell; that he repeatedly professed to them his innocence, and when he did so they said he was a liar; that they told him he would have to make the statement they wanted him to make and that they would force him to do so if it took a year to get it; that he did not make the statement but that it was made by someone else; that he did not read it and that it was not read to him; that when he signed it he did not know what it contained, and that they twisted his arms and compelled him to sign it.

No evidence was offered in rebuttal and there was no specific denial of the facts testified to by the plaintiff in error. It is true that the police officer denied that any inducement, threat or promise was made to procure the alleged confession, but such denial was in the form of a categorical answer made by him to a leading question volunteered by the court. This was but a conclusion of the witness and not the denial of any specific fact. He also said that no one twisted the arms of the plaintiff in error, but this was also in the form of a like categorical answer to a leading question not confined to any particular time. It does not appear that this witness knew all that had transpired between the time of the arrest and the time the statement was signed. There was therefore no proper foundation for his conclusions. Before the statement was signed the plaintiff in error had been in the custody and under the constant surveillance and questioning of other police officers for more than ten hours. The testimony of this witness covers only the time of the arrest and the period of about an hour while the statement was made. The remaining eight or nine hours are not accounted for. For all that appears this witness was the one who knew the least about what had taken place. We have repeatedly held that a court is warranted in excluding a confession unless all of the police officers engaged or present at the sweating of the accused are called as witnesses, and that the court has no

right to disregard the testimony of the accused showing that a confession was forced by threats and physical violence, without a specific denial of the facts to which he testified. (*People* v. *Spranger, supra; People* v. *Sweeney,* 304 Ill. 502; *People* v. *Rogers,* 303 id. 578.) The statement itself shows that five police officers and a stenographer were present while the statement was made. Only one of these six persons was called to testify.

The general rule is that unless voluntarily made a confession cannot be admitted in evidence. (*People* v. *Spranger, supra; People* v. *Buckminster,* 274 Ill. 435; *People* v. *Heide,* 302 id. 624; *Miller* v. *People,* 39 id. 457.) A confession is not voluntary where any degree of influence amounting to duress is used to obtain it by those having authority over the person of the accused, and a confession so obtained must be excluded because the law cannot measure the effect of such influence. (*People* v. *Heide, supra; Robinson* v. *People,* 159 Ill. 115; *Austine* v. *People,* 51 id. 236.) If the specific facts testified to by the plaintiff in error are true the alleged confession was not made voluntarily. In the condition of this record they must be so regarded, since they were not met by any denial. (*People* v. *Spranger, supra; People* v. *Sweeney, supra; People* v. *Rogers, supra.*) Our conclusion is that the alleged confession was improperly admitted for the reason that it was not shown to have been made voluntarily.

On the preliminary hearing the court, instead of encouraging a full investigation, greatly restricted the examination of the witnesses and held that the burden of proof was on the plaintiff in error. Had a full examination been had it would have disclosed many important additional facts. This appears from the testimony later introduced at the hearing on the merits, which shows that the plaintiff in error was not permitted to sleep; that the police officers made the answers in the alleged confession which are attributed to him; that he was told by them that he "would

be saving himself a lot of trouble" by signing it and that he "would be better off" by so doing; that one of the officers threatened to strike him with a black-jack and made an attempt to carry the threat into execution; that as he ducked to avoid the blow another officer jerked him back by the hair, while a third twisted his arms, and that he was thus frightened and forced into signing the statement. Under the general rule above stated it has been held that where to procure a confession the accused is told by police officers, while in their custody, that it would be better for him to make such confession it should not be admitted in evidence. (*People* v. *Heide, supra; Bram* v. *United States,* 168 U. S. 570.) The additional facts later developed show that to be precisely what was done in this case. While such additional facts were not brought out on the preliminary hearing, it was within the power of the court, when they came to its attention, to reverse its previous ruling and exclude the alleged confession. (*People* v. *Fox,* 319 Ill. 606.) Under the facts of this case the court should have done so or set aside the ruling and required a thorough and complete investigation. *People* v. *Spranger, supra; People* v. *Sweeney, supra; People* v. *Rogers, supra.*

It is next contended by the plaintiff in error that the court committed reversible error in examining and cross-examining witnesses and in usurping the functions of counsel by generally participating in the conduct of the trial. In some instances the court propounded to the witnesses more interrogatories than did counsel for both sides combined; in others almost as many. To illustrate: The court asked of one witness 74 questions and counsel 61; of another 32, counsel 27; of another 25, counsel 41; of another 63, counsel 108; of another 26, counsel 50; of another, on cross, 19, counsel 24; of another 25, counsel 36; of another 26, counsel 31; and of two alibi witnesses, on direct, 56, counsel 40. This examination covered by far the greater part of the trial. There were no witnesses called

to whom the court did not propound a number of interrogatories. From our examination of the record we find no occasion for such procedure. No judge can rule impartially upon objections to his own questions or carry on an extended examination of witnesses without giving some indication of his attitude toward one side or the other. Men are not so constituted. The form and substance of the court's questions in many instances were such as would certainly lead the jury to conclude that the court thought the plaintiff in error was guilty. This is especially true of his examination of the alibi witnesses, which was clearly in the interest of the prosecution. Nothing should be said or done by the court in the presence of the jury to the prejudice of either party. (*People* v. *Krejewski,* 332 Ill. 120; *People* v. *Bernstein,* 250 id. 63; *Synon* v. *People,* 188 id. 609.) No objections were made to this procedure. We have repeatedly said that it is always embarrassing for counsel to object to questions asked by the court. (*People* v. *Bernstein, supra; People* v. *Krejewski, supra.*) For counsel to be obliged to object to the conduct of the court is equally embarrassing, but such objections are necessary in order to preserve the question for review. It has been considered solely for the purpose of avoiding, so far as possible, a repetition of the practice in the event of another trial.

The final contention of the plaintiff in error is, that the court gave to the jury erroneous instructions on behalf of the prosecution. The first instruction complained of is a definition of an accessory before the fact, and it advises the jury that such an accessory shall be considered as principal and punished accordingly. It is not claimed that the instruction is erroneous, but it is urged that there was no evidence to show that the plaintiff in error was an accessory before the fact. The evidence is that Siegal fired the fatal shots, and the plaintiff in·error, if guilty, could be

convicted only because he aided, abetted or assisted Siegal in the perpetration of the crime, and this instruction was proper. *People* v. *Jordan,* 303 Ill. 316.

The next instruction complained of is an abstract and involved definition of malice. It is substantially the same as that which is referred to as instruction No. 14 in the case of *People* v. *Corbishly,* 327 Ill. 312, in which it was held bad because purely an abstract proposition of law. The killing in this case was malicious, and there could be no question of the malice of those who participated in the commission of the crime. The giving of such instruction, therefore, was not prejudicial. *People* v. *Corbishly, supra.*

Another instruction complained of outlines the rules for determining the credibility of a defendant when testifying in his own behalf. It is substantially the same as the instruction last mentioned in the opinion in *People* v. *Washington,* 327 Ill. 152, which was there held to be erroneous because the rules therein applied to the testimony of the defendant are not applied to the testimony of other witnesses. The giving of an identical instruction was held to be reversible error in *Fletcher* v. *State,* 101 Pac. 599, on the ground that the tests of credibility laid down were not made to "apply equally to all the witnesses for the State and the defendant alike." We have held in a number of cases that such an instruction ought not to be given. *People* v. *Sawhill,* 299 Ill. 393; *People* v. *Harrison,* 261 id. 517.

Except for the alleged confession, erroneously admitted, there is not sufficient evidence in the record to sustain the conviction of the plaintiff in error, and the judgment of the criminal court is therefore reversed and the cause remanded.

*Reversed and remanded.*