THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SPENCER MALCOM, Defendant-Appellant.

(No. 56710;

First District (2nd Division)—August 28, 1973.

James J. Doherty, Public Defender, of Chicago, for appellant.

Bernard C. Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

On the morning of 13 March 1970 two male Negroes, one tall and thin, the other shorter, entered a cleaner's shop at 838 Montrose Avenue in Chicago. Bernice Odem, the 73 year old manager, was alone in the store. Mrs. Odem was ordered to the rear of the store and told to lie on the floor. The shorter man, armed with a gun, emptied the cash register while the taller man, armed with a knife, took a ring from Mrs. Odem's left hand and was attempting to take another ring from her right hand.

At that juncture, Mr. Dubin, the owner of the establishment, entered the store. The shorter man confronted him with the gun and took his money. Afterwards Mr. Dubin struggled for the gun and was shot and killed by the shorter man. Mrs. Odem was then shot, by the shorter man, once in the neck and once in the head. The taller man then stabbed her seven times. In spite of her wounds, Mrs. Odem survived.

Later that morning, one Norris White was visited by the defendant-appellant, Spencer Malcom (hereafter defendant), and one Nate Dozier. Defendant told White that he and Dozier had "offed" somebody (meaning that they had killed somebody). Defendant related that Dozier had shot both Mr. Dubin and Mrs. Odem and that, after Dozier had run out of bullets, defendant had proceeded to stab Mrs. Odem. The two offenders then gave the gun and the knife to White who buried the weapons in two different places. White received a portion of the proceeds from the robbery. Thereafter, the three men left the State.

White gave himself up and was arrested in California on 28 March 1970. He was returned to Chicago where he told the police about his conversations with defendant and Dozier. While free on bond, White located the gun he had buried and turned it over to the police. It developed that the gun had been in White's possession prior to the robbery, but White had not been aware that the gun was missing until it had been returned to him by Dozier on the morning of the incident. The knife was not recovered.

In the meantime, York Anderson, a Chicago police officer and a friend of defendant's family, had learned that defendant was wanted in the investigation of the incident. After several conversations with defendant's father, Anderson met with defendant on 21 March 1970 at defendant's home. Anderson informed defendant that he was under investigation for a homicide robbery and then placed defendant under arrest. Defendant was then advised of his constitutional rights. Nothwithstanding the warning, defendant implicated himself in the robbery, adding he did not want to be picked up for murder.

After hearing defendant's story, Anderson took him to Area 6 Homicide. Anderson next met defendant the following morning when he accompanied defendant and some other police officers to the hospital where Mrs. Odem was being treated for her wounds. Defendant identified Mrs. Odem, went over to her, and apologized for what he had done.

Defendant gave the police two oral statements (other than his initial statement to Officer Anderson) in which he described and admitted his part in the incident. Each statement was then typed and defendant signed the typed statement. The first statement was taken at about 6:00 A.M. on 22 March 1970, before the trip to the hospital. The second statement was taken after the trip to the hospital. Before each statement was taken, defendant was advised of his constitutional rights.

Prior to trial, defense counsel filed a motion to suppress all three statements made by defendant (the two signed statements and the first oral statement to Officer Anderson). The basis for the motion was that the confessions were the product of undue influence and a physical or mental coercion. No challenge was made regarding the adequacy of the *Miranda* warnings. A hearing was held on the motion at which all the officers connected with defendant's interrogation testified. Defendant and his mother testified for the defense. The motion to suppress was denied.

After the trial, at which the statements of defendant were admitted into evidence, the jury found defendant guilty of the murder of Mr. Dubin on the basis of accountability and of the attempt murder and armed robbery of Mrs. Oden. Defendant was sentenced to a term of not less than 100 nor more than 199 years for the murder. For the armed

robbery, defendant was sentenced to a term of not less than 25 nor more than 40 years, which sentence was to run consecutively with the murder sentence. Finally defendant was sentenced to not less than 15 years nor more than 20 years for the attempt murder. This sentence was to be served concurrently with the murder sentence.

*Opinion.*

Defendant first contends that at the hearing on his motion to suppress his confessions, defense counsel's cross-examination of the State's witnesses (specifically, Officers Anderson and Skelly) was so severely restricted as to violate due process of law. The allegation in the motion to suppress was that the defendant had been questioned continuously by three or four detectives walking in and out of rooms in the police station for about five hours. During the cross-examination of Officer Anderson, the trial judge sustained objections to the following questions: (1) whether Anderson had spoken to anyone else in the police department concerning the case; (2) what caused him to become interested in the case; (3) whether he was looking for defendant after he had learned about the case; (4) whether he went to defendant's father's home for the purpose of questioning defendant; (5) whether he knew if defendant was wanted for questioning at this time; (6) if he knew whether other personnel of the police department were assigned to investigate this case; (7) whether the two detectives who were questioning defendant immediately after he was brought into Area 6 Homicide were questioning him about the homicide; (8) what his purpose was in going back to see defendant the following morning; (9) whether defendant had confidence in him; (10) where it was that he stopped to get defendant a sandwich when defendant was being returned from the hospital visit; (11) what his interest was in the case; and (12) why detectives Miller and Serafini picked him up at the 18th District on the following morning.

Likewise, during the cross-examination of Officer Skelly (one of the officers who had taken defendant's first written statement), the trial judge sustained objections to the following questions: (1) whether defendant was sleeping when the officer had him taken out of his cell at 5:40 A.M.; (2) whether he looked sleepy at the time; (3) what was the officer's reason for talking to him; (4) whether he gave defendant anything to eat or drink when he came out of his cell.

Defendant argues that the answers to these questions were relevant to his claim of physical or mental coercion.

■■ The facts constituting the alleged misconduct must be stated in the motion to suppress. (Ill. Rev. Stat. (1969), ch. 38, sec. 114—11(b)). Here the objections of the State to the questions asked on cross-

examination of Officers Anderson and Skelly where sustained on the ground of lack of any relevance of the questions asked to the facts alleged in the motion to suppress. The questions asked really amounted to a fishing expedition in search of facts with which to support the motion. We are of the opinion, therefore, that the trial judge properly restricted defense counsel's cross-examination of Officers Anderson and Skelly.

● ■ Defendant next contends that the trial judge erred in denying the motion to suppress his confessions because he had testified to facts which established the involuntary character of the confessions, which facts had not been specifically denied or rebutted by the State. The facts testified to by defendant were a statement by Officer Miller that defendant needed a "whooping" and a statement by Officers Anderson and Miller that things would "go easier" for defendant if he gave a statement. None of the officers specifically denied that the statements had been made.

Defendant relies on the case of *People v. Holick* (1929), 337 Ill. 333, 169 N.E. 169. There the defendant testified that he confessed only after having been continuously threatened with physical harm for a period of ten hours while in a weakened condition. Only one of the six persons who took part in his interrogation testified, and that person was present only for about one hour. No evidence which specifically rebutted defendant's testimony was introduced. The reviewing court held that the defendant's confession should have been excluded because all of the police officers present at the questioning had not been called as witnesses and because the trial court was not free to disregard the testimony of defendant showing that the confession had been forced by threats of physical violence in the absence of a specific denial of the facts to which defendant had testified.

The burden is on the State to prove the voluntariness of the confession by a preponderance of the evidence. (*People v. Thomlison* (1949), 400 Ill. 555, 81 N.E.2d 434; Ill. Rev. Stat. (1969), ch. 38, sec. 114—11(d).) Here, unlike *Holick*, all of the officers who questioned defendant had testified and were available for cross-examination within proper limitations. All of the officers testified that neither undue influence nor mental or physical coercion was exerted on defendant. The testimony of Officer Anderson is especially persuasive since he was acting throughout as a friend of defendant and of defendant's family. Furthermore, even though the two statements were not specifically denied, their probative value was weak and was clearly outweighed by the counter testimony. We cannot say that the denial of defendant's motion to suppress was against the manifest weight of the evidence.

■ ■ Defendant next contends that he was denied a fair trial because the trial judge allegedly disparaged and belittled defense counsel before

the jury to the prejudice of defendant. The facts that gave rise to this contention are that the trial judge repeatedly admonished defense counsel against making "speeches" in support of counsel's objections.

Defendant argues that *People v. Lewerenz* (1962), 24 Ill.2d 295, 181 N.E.2d 99, controls this issue. In that case the trial judge castigated defense counsel on sixteen different occasions for making speeches. The Supreme Court concluded that the impression conveyed to the jury by the remarks of the trial judge was prejudicial error.

*Lewerenz* establishes that repeated comments by a trial judge to counsel making trial objections against making "speeches" in support of those objections is normally improper and may constitute reversible prejudicial error. But *Lewerenz* is clearly distinguishable from the case at bar. Here defense counsel provoked the trial judge's responses by repeatedly ignoring the judge's rulings on counsel's objections and by his trial tactics of "yelling and screaming"—all in the light of his own in-court statement that he realized he didn't have much in the way of a defense. Defendant cannot now complain of replies by the court to his own counsel's improper arguments and harassment of the prosecutor and the court. *People v. Watson* (1967), 87 Ill.App.2d 453, 231 N.E.2d 695.

■■ Defendant's fourth issue on appeal is whether it was error for the trial judge to refuse to instruct the jury on accomplice testimony. Defendant contends that Norris White was an accomplice and that, therefore, the jury should have been given I.P.I. Criminal 3.17 which covers accomplice testimony and its attending infirmities.

The record indicates, however, that Norris White was, at most, an accessory after the fact. In *People v. Sapp* (1918), 282 Ill. 51, 118 N.E. 416, the court stated that an accessory after the fact cannot be considered an accomplice within the meaning of that term as used in an instruction regarding the weight to be given to accomplice testimony. Likewise under the Illinois Criminal Code he is fully accountable for a crime as an accomplice if he gives aid before or during its commission, but not where he gives and after its commission (Ill. Rev. Stat. 1969, ch. 38, sec. 5—2(c)). The record does not show that Norris White was involved in these criminal acts at any time earlier than the visit to his house by defendant and Dozier after the crimes had been committed. The trial court, therefore, was correct in refusing to give the tendered jury instruction.

■■ Defendant's fifth contention is that the trial court erred in imposing sentences for the crimes of armed robbery and attempt murder after defendant had been found guilty of, and sentenced on, the murder charge. Defendant argues that all three crimes arose out of the "same conduct" and that, therefore, multiple sentences were improper under

(Ill. Rev. Stat. 1969, ch. 38, sec. 1—7(m)) and now, under (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—8—4(a) and (b)).

However, even though the victim be the same, and the time span short, if the various offenses are distinct, multiple sentences are proper. (See *People v. Gates* (1970), 123 Ill.App.2d 50, 259 N.E.2d 631.) In the present case, the murder of Dubin and the attempt murder of Mrs. Odem involved separate and distinct conduct directed toward different people. The murder of Dubin had been completed before Dozier and then defendant attempted the murder of Mrs. Odem; indeed, the completed murder of Dubin appears to have supplied a motive for the attempted murder of Mrs. Odem. Similarly, defendant's armed robbery of Mrs. Odem had been a completed offense before the murder of Dubin and before defendant's attempted murder of Mrs. Odem. Defendant's offenses of armed robbery of Mrs. Odem followed by the murder of Dubin (on an accountability basis) followed by the attempt murder of Mrs. Odem were time-sequential in the course of a developing series of events, and each prior act, with its accompanying mental state, was distinct and completed before the next subsequent separate act began. We see nothing in the record of this case which would lead us to conclude that any two of these three crimes involved the "same conduct" or "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective".

■■ Defendant's final contention is that the sentences imposed by the trial court were excessive and that they should be reduced pursuant to our authority under Supreme Court Rule 615(b)(4). At the hearing in aggravation and mitigation, the State showed that defendant had been fined for disorderly conduct in 1969 and had been sentenced to six months in the House of Correction in 1968 for criminal damage to property (reduced from burglary). The State emphasized the "horrendous" nature of defendant's conduct in the instant case and noted that, when defendant was telling White what he and Dozier had just done, defendant was laughing about it. In mitigation, defense counsel noted that defendant had no felony convictions in his prior record; that defendant had given himself up to the police; that defendant had not "plunged" his knife into Mrs. Odem; that defendant's laughter while talking to White simply indicated how illiterate defendant was.

We do not think that, given the nature and circumstances of these crimes, the sentences should be reduced nor that the consecutive sentence for the armed robbery should be made concurrent. It has been held that our power to reduce sentences should not be exercised without a substantial reason for doing so. (*People v. Cassman* (1972), 7 Ill.App.3d 786, 288 N.E.2d 667; *People v. Ledferd* (1968), 94 Ill.App.2d

74, 236 N.E.2d 19; *People v. Shockey* (1966), 66 Ill.App.2d 245, 213 N.E.2d 107.) Our supreme court, in discussing our power, has stated that the power

> "* * * should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals."*People v. Taylor* (1965), 33 Ill.2d 417, 424, 211 N.E.2d 673; *accord, People v. Caldwell* (1968), 39 Ill.2d 346, 236 N.E.2d 706.

We see no substantial reason which would enable us to make a cautious exercise of our power.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.