In re ANDRE FRANKLIN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. ANDRE FRANKLIN, Respondent-Appellant.)

First District (3rd Division)   No. 61793

Opinion filed September 7, 1976.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Andre Franklin, a minor, was placed under court supervision in April 1973. Four months later, the State filed a petition for adjudication of delinquency and wardship, alleging that the respondent committed a burglary. Subsequently, Franklin admitted this crime and on May 27, 1974, the court made a finding that he was delinquent and placed him on probation for six months. Prior to the termination of this probationary

period, the State filed a supplemental petition for relief, charging that Franklin had committed the criminal offense of armed robbery. After a hearing the court reaffirmed its prior adjudication of delinquency and ordered the respondent committed to the Department of Corrections. Franklin appeals, contending that the trial court's hostility towards his counsel prevented him from receiving a fair hearing and that the court was without jurisdiction to place him on probation or to commit him to the Department of Corrections because he was never adjudged a ward of the court.

The respondent's first contention concerns remarks, which were exchanged between the trial court and his counsel, after his counsel indicated that she had not complied with a previous court order directing her to supply an interpreter. On the first hearing date the State provided an interpreter who was found qualified by the court to interpret for the complaining witness who spoke only Spanish. However, before the direct examination of this witness had proceeded very far, the respondent's counsel began objecting to the interpreter's method of translating the prosecutor's questions. She claimed that the interpreter was explaining the questions to the witness, rather than making a direct verbatim translation. At this point, the translator became upset, refused to continue and walked out of the courtroom.

The State then proposed a second interpreter, Lupe Rodriquez, but the respondent's counsel objected that she was not qualified. After this objection, the court ordered the counsel to select an interpreter of her own choosing and to produce that individual the next morning. The court stated that the court would pay the fees of the new interpreter. The hearing was then continued until the next day.

When the hearing reconvened, the respondent's counsel argued that, if she provided an interpreter to examine the complaining witness, she would be aiding the State's case, and that because of this the court's order violated the respondent's Fifth Amendment right against self-incrimination. She said that she would not comply with the order unless she was threatened with contempt. In reply to this assertion, the court said that she would indeed be cited for contempt unless she obeyed. There then occurred a lengthy discussion concerning the legal aspects of the court's order.

During this discussion remarks were made which Franklin cites as evidence of the court's hostility and lack of impartiality: the court stated that the first interpreter was justified in walking out of the courtroom because she could not work with his counsel; that the court threatened his counsel with contempt three times; that the court accused her of being dilatory, of blowing hot and cold and of playing games, and stated that she was twisting what the court said. Franklin also claims that these

remarks had an intimidating effect on his counsel during her presentation of his defense.

■■ On appeal, a defendant cannot complain of responses made by the trial court, if these remarks were improperly provoked by his own counsel. (See *People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352.) Each of the comments cited by the respondent was provoked by the contumacious conduct of his counsel. She unreasonably objected to the two interpreters proposed by the State, even though both were acceptable to the court. She objected to the first and her method of translating in such an offensive manner that this person refused to continue. She then objected that the second interpreter, Lupe Rodriquez, was not qualified. This objection caused the trial court to delay the hearing until the following day. The next morning she did not produce an interpreter as ordered. When threatened with contempt, she attempted to recall Rodriquez. Rodriquez refused to interpret because counsel had termed her unqualified. The hearing was consequently delayed a third time until another interpreter was located. These actions induced the court's comment that counsel was being dilatory and the comment that she was blowing hot and cold and playing games.

The court stated that its only concern was eliciting the truth from the complaining witness; that it was not interested in obtaining an answer that would please the court, the State or the respondent; that it only wanted the witness to answer the questions to the best of his ability through the translation of an interpreter. Soon after the court made this statement, the attorney renewed her argument that the court was not furthering justice by forcing her to choose an interpreter. In response to this, the court said, "[Y]ou misunderstand what the court was trying to do here.* * *You are twisting what the Court said."

■■ Even if the court's comments had not been provoked by the attorney, we would deem them harmless. The comments were made before the actual hearing began; they were directed to the attorney—the respondent was never mentioned, and the dispute over the interpreters was not referred to during the hearing itself. The lack of bias against the respondent is further evidenced by the fact that the court granted his counsel's motion to strike the testimony from the first day's abbreviated hearing, stating that it wanted to start the hearing anew.

■■ The respondent received a fair trial uninfluenced by the friction between his counsel and the court. Further, it is obvious from the record that she was not at all intimidated by anything the court had said. She presented a competent and vigorous defense on his behalf.

■■ The respondent's second contention is that the court lacked jurisdiction to place him on probation or to commit him to the Department of Corrections because in neither instance did it make an oral

or written adjudication that he was a ward of the court. This same contention has been passed upon by this Court: *In re Cajigas* (1976), 39 Ill. App. 3d 600, 351 N.E.2d 610; *In re Ross* (1976), 37 Ill. App. 3d 827, 347 N.E.2d 457; *In re Barr* (1976), 37 Ill. App. 3d 10, 344 N.E.2d 517. We have held that the trial court must make an explicit adjudication that a minor is a ward of the court before the court has jurisdiction to enter a dispositional order. If the necessary wardship adjudication was not made in this case, the court's orders of probation and commitment are void.

The State, however, argues that the respondent is precluded from raising the wardship adjudication contention on appeal because he did not raise it in the trial court either at the time he was placed on probation or when he was committed to the Department of Corrections. This argument overlooks the fact that a void order may always be challenged on appeal. *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.

Therefore, the order committing the respondent to the Department of Corrections and the prior order placing him on probation for six months are reversed, and the cause is remanded with directions to the court to determine whether there was an adjudication that it was in his best interest and that of the public that he be adjudged a ward of the court. If the court finds that there was an adjudication of wardship, the orders of probation and commitment or either of them, shall stand. If it is determined that no adjudication of wardship was made, the court shall decide whether such an adjudication is in order. If the court finds that the respondent has not been and should not be adjudged a ward of the court, the petition shall be dismissed and the respondent discharged.

Order reversed; cause remanded with directions.

MEJDA, P. J., and McNAMARA, J., concur.