THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY GREEN, Defendant-Appellant.

First District (5th Division)   No. 85—3577

Opinion filed December 9, 1988.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., James E. Fitzgerald, and Lynda A. Peters, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant, Johnny Green, was convicted of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)) and armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)). He received concurrent sentences of 40 years' imprisonment for murder and 30 years' imprisonment for armed robbery. On appeal, he raises the following two issues: (1) whether the trial court improperly restricted defense counsel's questions when he was cross-examining a State witness in a hearing on defendant's motion to suppress statements; and (2) whether defendant's sentences for murder and armed robbery were excessive.

For the following reasons, we affirm.

On October 16, 1983, in response to a radio call, two Chicago police officers discovered Cornell Lane lying on the ground with a puncture wound in the right side of his head. He was unconscious and the pockets of his pants were pulled out. Lane was taken to the hospital

where he died the next morning.

After a police investigation, defendant and Darron Gordon were charged with murder, armed robbery, and armed violence for the robbery and death of Lane. Prior to trial, defendant moved to quash his arrest and suppress written and oral statements he made to the police. On appeal, he does not raise any argument concerning allegations relevant to the motion to quash arrest. Relevant to the motion to suppress, he alleged the statements were made involuntarily based on the following four allegations: (1) he was not brought before a judge within a reasonable time of his arrest; (2) police threatened and/or caused him physical pain; (3) he was falsely told his signature was necessary on a document to obtain his release from custody; and (4) police made material misrepresentations to him by telling him that he had been identified by eyewitnesses when no such eyewitnesses were known to police.

Defendant testified at the motion to quash arrest and suppress hearing but was only questioned concerning the facts of his arrest. He was not questioned concerning any of the allegations that his statements to police were not voluntarily made.

Detective James O'Leary testified that on October 20, 1983, he and his partner, Detective James Redmond, interviewed defendant and advised him of his constitutional rights. Detective O'Leary testified neither he nor any member of the police threatened or caused defendant physical pain, induced defendant to sign the statement by telling him it was necessary to obtain his release from custody, or made misrepresentations to defendant.

Detective James Redmond testified that later the same day, he was present in an interview room with defendant, Assistant State's Attorney Thomas DiCianni, and a court reporter. At that time, defendant was advised of his constitutional rights and made a statement concerning the incident which was taken down by the court reporter. On direct examination, Redmond denied each of the allegations in defendant's motion to suppress.

When defendant's attorney cross-examined Redmond, he asked several questions concerning who told defendant to sign the statement, whether defendant asked to sign the statement, and whether defendant signed the statement voluntarily. The court sustained the State's objections to each of those questions and the following exchange took place between defendant's attorney and the trial judge:

> "THE COURT: You have three or four allegations in [the motion to suppress] and those are the things that you must address yourself to, namely, he threatened the defendant with

physical beating, he struck the defendant's bandaged hand, and he made material misrepresentations. That is what you must confine it to.

MR. YOUNG: Judge, I think that my argument would go— my questions go to the total voluntariness of the statement in the event the—

THE COURT: That is not in your petition. Just argue what you have in your petition."

DiCianni, the assistant State's Attorney who was present when defendant made the court-reported statement, denied defendant's allegation that he was told his signature was necessary on a document to obtain his release from custody when, in fact, the document was the court-reported statement.

Defendant's motion to quash arrest and suppress was denied and the case proceeded to trial. Defendant and Gordon were tried together, represented by separate attorneys, and both signed jury waivers.

At trial, the parties stipulated that Lane died as a result of a gunshot wound to the cranium. The parties also stipulated that the bullet recovered from Lane was fired from the .22 caliber gun recovered by police during the investigation.

The statements of both defendant and Gordon were introduced at trial. In Gordon's statement, he said on the night of October 16, 1983, defendant came to his apartment and said, "Hey man, let's make some money." They left Gordon's apartment and defendant showed Gordon a .22 caliber gun. The two approached Lane, who was walking down the street. Defendant put the gun to Lane's head and said, "Don't move. This is a stickup." Lane reached for the gun and a struggle ensued. The gun went off and Lane fell to the ground. Defendant went through Lane's pockets and took $65 and his wallet. Gordon and defendant returned to Gordon's apartment and Gordon put the gun under the mattress. They sold the food stamps to customers outside a grocery store and bought beer and marijuana with the proceeds. They drank the beer and smoked the marijuana and Gordon went back to his apartment. Shortly thereafter, defendant arrived, took the gun, and left the apartment.

Defendant's statement was substantially similar to Gordon's with the exception of a few points. Defendant stated it was Gordon who said, "Hey man, let's go make some money. We'll do a stickup." When defendant asked whether Gordon had a gun, Gordon left the apartment for a short time and returned with a gun. Defendant said that as they approached Lane, the gun dropped from Gordon's pocket and

defendant picked it up. Gordon grabbed Lane around the neck and defendant pointed the gun at Lane and said, "This is a stickup." Lane reached for the gun and a struggle ensued, causing the three men to fall to the ground. The gun went off and defendant threw it on the ground. Defendant stated it was Gordon who went through Lane's pockets, removing $65 in food stamps, $3, and a wallet. Gordon picked up the gun and the two men returned to Gordon's apartment. Gordon put the gun under the bed.

At the close of the State's case, both defendants' motions for directed verdict were denied. Both defendants rested without presenting evidence.

The court found both defendants guilty of murder and armed robbery. Defendant's motion for new trial was denied. The State sought the death penalty for defendant but the court found that although defendant was eligible, the circumstances of the case did not warrant the death penalty. The court sentenced defendant to 40 years' imprisonment for murder and 30 years' imprisonment for armed robbery. Gordon was sentenced to 37 years' imprisonment for murder and 30 years' imprisonment for armed robbery. The court stated it sentenced defendant to a longer prison term for murder than Gordon because the evidence established defendant shot the gun. Defendant filed a timely notice of appeal.

OPINION

Defendant argues that the trial court erred when, during cross-examination of Detective Redmond at the motion to suppress hearing, it sustained the State's objections to his questions concerning his signature on the written statement. Defendant contends his motion to suppress involved the general issue of whether he voluntarily signed the statement and, therefore, the court erred when it restricted his line of questioning during cross-examination.

Defendant contends the court unfairly limited his inquiry of Detective Redmond because it later allowed the State greater latitude in questioning another witness and in closing argument for the motion. Defendant cites to two pages in the record as support; however, we need not address these ponts in detail as we find that defendant's representation of the record is inaccurate. A review of the record reveals that the State limited its response to the motion to suppress to only those points that were relevant to defendant's allegations.

■ Prior to trial, a defendant in a criminal case may move to suppress evidence of his confession on the ground it was not given voluntarily. (Ill. Rev. Stat. 1983, ch. 38, par. 114—11(a).) The Code of

Criminal Procedure of 1963 provides that a motion to suppress must state facts showing that the confession was involuntary. (Ill. Rev. Stat. 1983, ch. 38, par. 114—11(b).) The court, in a hearing on a motion to suppress, may restrict questioning of a witness to those issues relevant to the allegations in the motion. (See *People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352.) The trial court's finding that defendant's confession was voluntary will not be disturbed on appeal unless contrary to the manifest weight of the evidence. *People v. King* (1986), 109 Ill. 2d 514, 488 N.E.2d 949.

■ Defendant relies on *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, for the general proposition that a defendant should be given broad latitude on cross-examination. The court in *Burbank*, however, upheld the trial court's restriction of defendant's cross-examination because defendant's questions created an innuendo which was not supported by the evidence. The general proposition cited by defendant, therefore, is not without limitation.

The situation presented is similar to *People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352, where defendant moved to suppress statements, alleging the statements were the product of physical or mental coercion. The motion to suppress was denied. On appeal, defendant claimed the trial court restricted his cross-examination of the State's witnesses so as to deny him due process of law. The appellate court found that the trial court properly sustained objections to defense counsel's questions because they lacked relevance to the facts alleged in the motion to suppress. The court stated the questions amounted to a fishing expedition in search of facts to support the motion.

■ Similarly, in the present case, defense counsel's questions concerning defendant's signature on the statement were not relevant to the allegations in the motion to suppress. The trial court sustained the State's objections as to who told defendant to sign the statement, whether defendant asked to sign the statement, and whether defendant voluntarily signed the statement. Although defendant raised four allegations in his motion to suppress, only the third allegation, that defendant was falsely told his signature was necessary on a document to obtain his release from custody, involves defendant's signature on the statement. That allegation is limited to the question of whether the police told defendant he must sign the statement to obtain his release from custody. Arguably, defendant's cross-examination question as to who told defendant to sign the statement was relevant to the third allegation. We find, however, that the trial court's failure to overrule the State's objection was harmless in light of Detective Red-

mond's denial of the allegation on direct examination. The remaining questions were not relevant to any of the allegations, and, accordingly, the State's objections to those questions were properly sustained.

■ Moreover, throughout the entire hearing on defendant's motion and the trial of this cause, there was absolutely no evidence presented to support defendant's motion to suppress. Although defendant testified at the motion to suppress hearing, he did not present any evidence to support any of the allegations. The State, however, presented three witnesses who flatly denied each of the allegations. Therefore, the trial court's denial of defendant's motion to suppress was not against the manifest weight of the evidence.

Defendant also argues his sentences for murder and armed robbery were excessive and did not reflect his youth and potential for rehabilitation. The trial court denied the State's petition to sentence defendant to the death penalty and denied the State's request to sentence defendant to an extended-term sentence. Instead, the court imposed the maximum term of 40 years' imprisonment for murder and 30 years' imprisonment for armed robbery.

■ The Unified Code of Corrections provides that the sentence of imprisonment for murder is not less than 20 years and not more than 40 years (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(a)) and the sentence of imprisonment for armed robbery is not less than 6 years and not more than 30 years (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2(b), 1005—8—1(a)(3)). The purposes of the Code include imposing sanctions proportionate to the seriousness of the offenses and restoring offenders to useful citizenship. Ill. Rev. Stat. 1983, ch. 38, par. 1001—1—2.

■ The appellate court has the power to reduce an excessive sentence (107 Ill. 2d R. 615(b)(4)); however, the trial court's sentencing decision will not be disturbed absent an abuse of discretion. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606.) The trial court is normally in the best position to determine an appropriate sentence and its decision regarding sentencing is entitled to great deference and weight. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■ Defendant was 19 years old at the time of the murder and 21 years old at the time of the sentencing hearing. He confessed to the murder and admitted the gun was in his hands when it discharged, fatally wounding Lane. He was under the influence of marijuana and alcohol at the time. At the sentencing hearing, when the court asked whether he had anything to say, defendant stated, "I feel that you

found an innocent man guilty."

From a review of the presentence investigation report, the following information concerning defendant's background was revealed. From first through fourth grade, defendant attended a special school because he was evaluated as having psychological problems. The school reevaluated him after fourth grade and found his psychological problems were resolved. He then entered a Catholic school in fifth grade and, after eleventh grade, he quit school. He was employed for three summers and also worked part time at a gas station for two years. At the time of his arrest, he was unemployed for several years and enrolled in the Dawson Skill Center. Defendant is unmarried and has a five-year-old daughter who lives with her mother.

As a juvenile, defendant was convicted of robbery and sentenced to probation. As an adult, he was sentenced to one year's probation for theft, one year's supervision for theft, 17 days' time considered served for unlawful use of a weapon, two years' felony probation for theft from a person, and 90 days' imprisonment for unlawful use of a weapon.

Defendant contends that his enrollment in the Dawson Skill Center is evidence of his attempt to rehabilitate himself; however, the presentence report establishes that he was enrolled in the center when he committed the murder and armed robbery. Also, he was discharged from probation for theft only two months prior to the murder and armed robbery. Apparently, previous attempts to rehabilitate defendant have failed.

Defendant also contends he had a "history of emotional problems"; however, the report reveals psychological problems he may have had were resolved by the time he completed the fourth grade. No further evidence of continuing emotional problems is apparent from the record.

Based on the circumstances of the murder and armed robbery, the presentence investigation report, and defendant's previous criminal convictions, we find that the trial court's sentences were not an abuse of discretion.

■ Lastly, we grant the State's request to assess the sum of $50 against defendant as costs for this appeal. Ill. Rev. Stat. 1985, ch. 53, par. 8(a); *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

Judgment affirmed.

MURRAY and COCCIA, JJ., concur.