(No. 26818.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL TARVER *et al.,* Plaintiffs in Error.

*Opinion filed November 17, 1942—Rehearing denied Jan. 14, 1943.*

SAMUEL A. ARONFELD, and PHILIP L. HOWARD, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

An indictment returned in the criminal court of Cook county charged Paul Tarver, Otell Glenn, Rotell Glenn, Ernest Mack, Clarence Gaffney, Dolphus Gaffney, Richard Lowe and Clarence Kelley with the murder of Lacey Walker, a conspiracy to murder Lacey Walker, and a conspiracy to murder Ellis Strickland. The indictment was

dismissed as to Kelley prior to the trial. A jury trial was waived. At the close of the State's case the two Gaffneys and Richard Lowe were found not guilty. At the conclusion of all the evidence the defendants Tarver, Otell Glenn, Rotell Glenn and Ernest Mack were found guilty of the murder of Lacey Walker. Tarver and Mack were committed to the Illinois State Penitentiary for thirty-five years each and the Glenns for twenty years each. The ages of the several defendants range from 17 to 19 years. The only error argued is that the evidence is not sufficient to sustain the judgment of conviction.

The eight defendants named in the indictment resided in the same neighborhood on West Fifty-sixth street in Chicago and the deceased, Lacey Walker, and his associates of about equal number resided in the vicinity of Sixty-first street and Racine avenue. The evidence shows that sometime prior to July 25, 1940, defendant Rotell Glenn had an altercation with one Smiley, who appears to have belonged to the Walker group, in which Glenn received injury. Mack, Lowe and Rotell Glenn were together on the evening of July 24 and the trouble that Rotell had with Smiley was discussed. They concluded they would go to the Walker neighborhood, as they say, for the purpose of soliciting Ellis Strickland, a cousin of Glenn's, to assist in establishing peace with the Walker-Smiley group. About 8:30 on the morning of July 25, Tarver and Rotell Glenn went to the Mack home and the Smiley-Glenn affair was again discussed and Mack was asked to accompany them into the Smiley neighborhood. Mack testified he told them he would go if they promised there would be no shooting. However, Mack took a revolver with him and it is conceded it was used in firing the shot that killed Lacey Walker. The afternoon of July 25, when Tarver, Mack, Rotell Glenn and Lowe were en route to the neighborhood where the Walker-Smiley group resided, they met the two Gaffney boys, Kelley and Otell Glenn. Dolphus Gaffney

was driving a truck and the other boys had been assisting him all day in peddling fruit and vegetables. All eight went in the truck to the intersection of Sixty-first street and Racine avenue where the deceased and eight or ten men and boys were standing or sitting in front of a store located near the northwest corner of the intersection. It does not appear that Smiley or Strickland were present. The truck was stopped across the street from the Walker group. The evidence is in conflict as to how many of the boys that were in the truck got out, but it is clear that Rotell Glenn, Tarver and Mack were in the street. They advanced toward the Walker group, they say, for the purpose of making inquiry about Strickland. Some of the members of the Walker group testified to facts that would indicate the defendants advanced across the street with a defiant and challenging attitude. It is clear there were statements and accusations exchanged between the two groups which would ordinarily incite assaults and counter-attacks. In the course of the argument Tarver, who was carrying a toy pistol, snapped it a couple of times in Lacey Walker's face. Walker grabbed the toy and Tarver released his hold on it. The defendants' evidence indicates they then withdrew toward the truck and that Charles and Lacey Walker followed them, each flourishing a knife. The evidence of the eyewitnesses of the Walker group shows that none of the defendants who were in the street withdrew in the direction of the truck. Tarver obtained the revolver which Mack had brought from home and shot Lacey Walker in the stomach. He also shot Charles Walker, the bullet hitting him in the back. The evidence is in conflict as to whether the Walkers were armed with knives at the time of and preceding the shooting. Charles Walker, Charles Ahmed, who was a member of the Walker group, and Sam Usvolk, who operated the store in the front of which the Walker group was sitting, all testified that neither of the Walker boys had knives. All the defendants who are par-

ties to this writ of error and the codefendant Richard Lowe, testified that each of the Walkers had a knife and that they were flourishing them and advancing toward Tarver in a threatening manner. The Gaffney boys said they did not see any knife.

There is evidence that Mack was slow to surrender the revolver to Tarver, and that Tarver said "What do you think we came here for?" One witness testified he heard Rotell Glenn tell Tarver to get Mack's gun. There is also evidence that when Tarver took the gun from Mack they were near the truck and that after Tarver received the gun, he came part way across the street to where Lacey Walker was and shot him; that thereupon the other members of the Walker group turned to run and while they were running Tarver shot Charles Walker in the back. The location of the bullet wound in the back corroborates the State's evidence and the explanation of defendants that Charles Walker was undertaking to twist his body to avoid being shot and, in so doing, was shot in the back, is not convincing.

Immediately after the shooting the Tarver group left in the truck. A short time thereafter, the police, in response to a telephone call, went to a doctor's office, where they found Tarver and the two Glenns. Otell had been shot in the foot and the three defendants present explained to officer Piggott that it was accidentally done at the Glenn home. They told him that the gun with which he was wounded was in the coal pile in the basement of the Glenn home. The gun was found in the place designated. Police officer Crowley testified that at first Otell Glenn claimed to have been accidentally shot in his own home, but later admitted his .22 caliber rifle was accidentally discharged when he threw it on the floor of the truck after Lacey Walker was shot. On direct examination he testified that the accident occurred in his home but on cross-examination

admitted he had told the officer it occurred at the scene of the murder. Defendant Mack testified that he did not know that Otell Glenn's rifle was in the truck until he heard the discharge and Otell Glenn exclaimed "I am shot!" Sam Usvolk testified he saw two fellows with guns. The evidence warrants the conclusion that Otell Glenn had the sawed-off rifle in the truck when they arrived at the intersection where the shooting occurred and that he was out of the truck carrying the rifle and received the bullet wound when the gun was accidentally discharged when he was getting in the truck.

The evidence abundantly supports the conclusion that the Tarver crowd were banded together for the purpose of avenging the beating that Rotell Glenn had previously received. Frequent reference is made in defendants' brief to the "peace mission" in which the defendants were engaged and it is argued they came to the neighborhood where the Walker group resided for the purpose of establishing peace between the two groups. The preparation made in equipping themselves with a revolver and a sawed-off rifle, both of which were loaded, exposes the fallacy of the "peace mission" argument. Perhaps they had no definite intention to use the guns or to kill Lacey Walker or any other person, yet the evidence shows that they went into the neighborhood where the Walker group resided anticipating a fight. It is evident there was ill feeling between the two groups, engendered in part at least by the Smiley-Rotell Glenn affair. It is conceded that for several hours preceding the trip to the Walker neighborhood, the defendants discussed the Smiley-Glenn fight among themselves and the evidence supports the conclusion that they armed themselves before going to the other neighborhood for the purpose of securing a measure of retaliation against the other group. The defendants, whose case is before this court, constituted themselves members of a gang assembled

for the purpose of disturbing the peace and doing unlawful acts.

It is argued that Otell Glenn's conviction cannot be sustained for the reason it does not appear he was implicated in the shooting to the same extent as the other defendants. As previously stated, there is evidence to support the conclusion that Otell Glenn had the rifle with him when he arrived at the scene of the shooting; that he left the truck and was in the road carrying the rifle when the shooting occurred. Under such circumstances he became a member of the gang and was responsible for the acts done in carrying out the common purpose. A shot fired by one of the defendants, under the circumstances shown, was a shot fired by all and all of them must answer for the result. It is clear that the defendants whose case is before this court had a common design to do an unlawful act; then, in contemplation of law, whatever act any one of them did in furtherance of the common design is the act of all, and all are equally guilty of whatever crime was committed. *People* v. *Rudecki,* 309 Ill. 125; *Hanna* v. *People,* 86 id. 243.

Where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is for the trial court and where the evidence is merely conflicting this court will not substitute its judgment as to credibility of witnesses for that of the trial judge. (*People* v. *Bolger,* 359 Ill. 58; *People* v. *Mangano,* 356 id. 178; *People* v. *Fortino,* id. 415.) The defendants had a fair trial and their guilt is established beyond all reasonable doubt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*