THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE T. SANGSTER, Defendant-Appellant.

Fourth District    No. 16391

Opinion filed April 22, 1981.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil Greanias, State's Attorney, of Decatur (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

The jury found the defendant accountable for murder, armed robbery, and aggravated kidnapping, and the trial judge sentenced him to consecutive terms of 40, 30, and 15 years respectively. On appeal the defendant argues that the evidence is insufficient to sustain his conviction, that prejudicial evidence, a letter, was admitted, that the prosecutor made improper comments during closing arguments, and that the imposition of consecutive rather than concurrent prison terms was incorrect. We affirm the convictions and find no error with regard to the letter and closing arguments, but agree with the defendant that accomplices may not be given consecutive sentences under the statute in question.

At about 8 a.m. December 14, 1978, two persons alleged to be Bernice and Cornelius Lewis, siblings, robbed the Citizens National Bank in Decatur of $62,061.32. They attacked a van used to transport tellers from the main building to a branch bank a short distance away and seized the money transported in black suitcases. The guard who drove the van was shot and killed, and the Lewises took several of the suitcases. They drove a car they had stolen earlier that morning; the owner of the car, a woman, was locked in the trunk.

Although the defendant himself did not physically participate in the commission of the crimes he was accountable for what happened through planning the robbery and recruiting the principals. The State therefore had to prove the commission of the crimes and the defendant's prior or contemporaneous aid. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) The bulk of the evidence against the defendant came from two witnesses, Maurice Farris and Margaret Morgan; Farris was the driver in the robbery and received complete immunity in exchange for his testimony. The Lewises, implicated by Farris' testimony, slept at Morgan's house several nights, and she drove them out of Decatur after the robbery. Morgan was not immunized. The defendant did not testify.

Farris described in detail the planning and commission of the crime. He lived in a basement apartment in the defendant's home. According to Farris' testimony, the defendant recruited him to drive a car in the robbery. The defendant explained to Farris the morning routine at the bank and showed him the route the Lewises were to drive, where the Lewises were to abandon their car, and where they were to rendezvous with Farris.

Morgan testified that the defendant asked her to lodge two persons, the Lewises, for several nights in the middle of December. The morning of the robbery the Lewises sat in Morgan's house counting money; then at the Lewises' request, she delivered a paper bag to the barber shop where

the defendant worked. She did not look inside the bag. That night Morgan drove the Lewises to a bus station in Davenport, Iowa. Several weeks later the defendant twice spoke to Morgan about these events, describing the Lewises as dangerous persons and reassuring Morgan that she would be safe.

The State introduced other evidence that the defendant knew the Lewises. Telephone bills showed long distance calls from Farris' and the defendant's telephones to Bernice Lewis' and Cornelius Lewis' respective residences during the middle of December 1978. It should be noted that Farris testified that the defendant had access to his phone. Admitted into evidence over defense counsel's objection was a letter written by the defendant to Cornelius Lewis in April 1978; the testimony of FBI handwriting and fingerprint experts established that the defendant had written this letter. Sharon Bowen testified for the State; she lived with Cornelius Lewis from April 1976 through December 1978, and accompanied Cornelius to Decatur in April 1976. At that time they met with the defendant, whom Bowen identified in court. Cornelius Lewis did not see, telephone, or write the defendant frequently. Bowen did not know whether Cornelius received any letters from the defendant during the time she lived with him.

■■ The defendant first argues that he was not proved guilty beyond a reasonable doubt, attacking the strength of Farris' and Morgan's testimony. Because Farris was an accomplice in the crime, his testimony must be regarded with "skepticism and suspicion." It is urged that the uncorroborated testimony of an accomplice:

> "* * * is fraught with serious weaknesses such as the promise of leniency or immunity and malice toward the accused. (*People v. Gleitsmann* (1935), 361 Ill. 165.) Such testimony should be subject to careful scrutiny, 'acted upon with great caution' (*People v. LaCoco* (1950), 406 Ill. 303, 313), and have the 'absolute conviction of the truth' (*People v. Zaeske* (2d Dist. 1966), 67 Ill. App. 2d 115, 121). It is also true that whether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for conviction goes to the weight of the evidence and is, therefore, in the province of the jury or the court." *People v. Wilson* (1977), 66 Ill. 2d 346, 349, 362 N.E.2d 291, 292.

The State correctly points out that Morgan could not have been held accountable for the principal offenses and thus the weaknesses of accomplice testimony do not affect her own. Although the Lewises stayed at her home two nights preceding the robbery, nothing indicates that she knew their criminal purpose. At most, she was an accessory after the fact for driving the Lewises to Iowa when she had reason to suspect that they had robbed the bank. For accessories after the fact, the jury need not

receive an instruction on accomplice testimony. (*People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352; *People v. Coddington* (1970), 123 Ill. App. 2d 351, 259 N.E.2d 382.) Morgan's testimony was impeached, however, with her prior inconsistent statements. Although she denied it at trial, Morgan told the public defender in February 1980 that she had been under the impression that the police wanted her to implicate the defendant.

As *Wilson* suggested, Illinois follows the common law rule that uncorroborated accomplice testimony may be sufficient to convict. (*People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500.) Yet the courts repeatedly emphasize that accomplice testimony is weak stuff; it is "inherently suspect" (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 394 N.E.2d 541), should be viewed "with caution and suspicion" (*People v. Kiel* (1979), 75 Ill. App. 3d 1030, 394 N.E.2d 883), and is to be relied on only with the "utmost caution" (*People v. West* (1977), 54 Ill. App. 3d 903, 370 N.E.2d 265), for the accomplice's credibility is "subject to inherent doubt" (*People v. Seymour* (1977), 53 Ill. App. 3d 367, 368 N.E.2d 1018). To be sure, leniency and rewards do not by themselves automatically raise a reasonable doubt. (*People v. Pavelich* (1979), 76 Ill. App. 3d 779, 395 N.E.2d 202; *People v. Yancey* (1978), 57 Ill. App. 3d 256, 372 N.E.2d 1069.) In this case Farris was given total immunity for his testimony.

During the several days immediately following the robbery Farris was questioned. The police continually mentioned the defendant, but Farris mentioned then that the defendant had not been involved in the crimes. Farris feared greatly for his own life. He thought that if he went to trial he would be sentenced to death. Farris did not implicate himself until March 1979 when the police suggested that if he revealed all he knew they might grant him immunity in exchange for his testimony. Although the promised immunity was complete, Farris' testimony had to fulfill certain conditions. He was told that he would not be immunized if it developed that he had shot anyone that morning. When he gave the police his statement Farris believed that implicating the defendant was crucial to the agreement. Also, he had been informed that a chemical test on both his hands showed that he may have fired a gun with his left. Farris was also permitted to examine all the information on the crime before giving his statement. This information included Morgan's statement, the telephone bills, and the results of the laboratory test on his hands.

■■ It is for the jury to determine the credibility of Farris and Morgan. The evidence is not so implausible or improbable as to suggest a reasonable doubt of guilt.

The defendant next argues that the trial judge erred by allowing into evidence a letter written by the defendant to Cornelius Lewis in April 1978. The prosecutor read the letter to the jury during his summation:

"Hey, Blood, just a note to let you know that business is supposed to come to a head in a couple of days. I got a dude out of L.A. to come dance with short man, dig? Thanks for all your attempts to help in the business. Your efforts definitely won't go unnoticed if all go [*sic*] as planned. I'll call you the minute the dance is over. Meanwhile, take care; trust me; and give Sharon my best. Short man told me how nice you and Sharon treated him while there. You are real people, Mingo. Keep your fingers crossed that we win the dance contest. In a minute, T."

The defendant acknowledges that the letter helps prove that the two men knew each other, and provides some insight into the depth of their friendship but argues that it seems to refer to criminal conduct and thus is too prejudicial to justify its admission. Defendant admits that such is an interpretation rather than an overt admission. The defendant also argues that the letter is cumulative because he never denied knowing Lewis and Bowen's testimony proves that they knew each other. The jury was instructed to disregard the letter as evidence of earlier criminal conduct:

"You have seen and heard evidence about a letter allegedly sent by the defendant, Willie Sangster, to Cornelius Lewis in April of 1978. This evidence was. received solely on the issue of showing what relationship, if any, existed between Willie Sangster and Cornelius Lewis. This evidence is to be considered by you only for the limited purpose of showing such relationship, and may not be considered by you for any other purpose."

■■ The State argues that the prejudicial effect of the letter was minimal because an innocent interpretation of its cryptic message was available, namely, plans to play music at a dance, and that the instruction directing the jury to ignore the letter as evidence of other criminal conduct prevented any improper use. The letter was relevant as evidence that the defendant and Cornelius Lewis knew each other to a greater degree than a mere acquaintanceship. That proposition was a material one in the context of this case. Although relevant evidence should be excluded when its prejudicial effect outweighs its probative value (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295), we cannot say that the trial judge abused his discretion (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14) in allowing the jury to hear what the letter said. Introducing the envelope alone would not have necessarily proved that the two men were friends; the jury needed to hear the message.

The defendant .argues that the prosecutor twice made improper remarks during his rebuttal at the close of trial. First, the defendant excerpts a reference by the prosecutor to trial tactics; the prosecutor began his rebuttal by referring to the adage, "If you can't try the case, you

try the prosecutor," and then saying that defense counsel, in its own closing argument, had tried to focus the jury's attention on the prosecution and away from the evidence. The trial court overruled defense counsel's objections to these remarks.

■■ The prosecutor's remarks were harmless and were invited by defense counsel's closing arguments; defense counsel attacked the State for using perjured testimony and stopping at no expense to convict the defendant while permitting Farris and Morgan to escape liability. Remarks responding to attacks on prosecutorial decisions are permitted as "invited comments." (*People v. Myers* (1966), 35 Ill. 2d 311, 220 N.E.2d 297.) The prosecutor's statements here fall far short of the prejudicial comments in *People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295 (prosecutor assured jury that the defense was the weakest he had heard in five years of criminal practice and that defense counsel himself did not believe it) and *People v. Pearson* (1972), 2 Ill. App. 3d 861, 277 N.E.2d 544 (prosecutor implied defendant's guilt from defense counsel's failure to call a particular witness).

■■ The defendant excerpts a second series of remarks made by the prosecutor during rebuttal. Here the prosecutor explained that the desire to convict the organizer and instigator of the crime had led to the decision to prosecute the defendant, grant immunity to Farris, and not charge Morgan. This explanation implied that the testimony of the State's witnesses was truthful and that the defendant was indeed guilty. A prosecutor must couple his assertion of a defendant's guilt with an analysis of the evidence; he may not flatly assert that the defendant was guilty or personally vouch for the veracity of his witnesses. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) The comments here perhaps entered the forbidden domain of personal pledges, yet were also invited by defense counsel's attack on the decision to prosecute the defendant and not Farris or Morgan. (*Myers.*) The responsive nature of the prosecutor's comments is dominant; they did not equal the prejudice inherent in expressly assuring the jury that the defendant would not have been charged if innocent. *People v. Adkins* (1973), 16 Ill. App. 3d 394, 306 N.E.2d 709; *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330.

The trial judge sentenced the defendant to consecutive sentences under section 5—8—4(a) of the Unified Code of Corrections:

> "* * * The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the

defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).)

The question is whether this provision permits the trial judge to impose consecutive sentences on accomplices when the principal inflicted the severe physical harm. The defendant argues that because he is only accountable for what occurred and did not himself injure anyone, the imposition of consecutive rather than concurrent sentences was improper.

The trial judge considered this issue at some length and decided that consecutives were permitted because the legislature had not exempted accomplices in section 5—8—4(a) as they had in section 9—1(b)(6)(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(6)(a)); that latter provision, one of the aggravating factors considered in sentencing murderers, says:

> "(a) the murdered individual was actually killed by the defendant and not by another party to the crime or simply as a consequence of the crime."

■■ The sentencing provisions for murderers are *sui generis*, however, and are not a satisfactory guide to interpreting provisions in the Unified Code of Corrections. *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.

■■ ■ It is not clearly apparent that the equal guilt of principals and accomplices supports the result here. In *People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29, the court interpreted sections 5—1 and 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 5—1, 5—2) to mean "that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses any criminal act done in furtherance of the planned and intended act." (57 Ill. 2d 493, 497, 315 N.E.2d 29, 32.) *Kessler* is a rule of liability rather than a rule of sentencing and it does not require application of section 5—8—4(a) to accomplices. First, *Kessler* requires equal guilt but not equal punishment. An accomplice's sentence does not have to be the same as his principal's. (*People v. Crutcher* (1979), 72 Ill. App. 3d 239, 390 N.E.2d 571; *People v. Colone* (1978), 56 Ill. App. 3d 1018, 372 N.E.2d 871.) Furthermore, the extent of a defendant's participation in a crime should be considered in determining his sentence. (*People v. Morris* (1969), 43 Ill. 2d 124, 251 N.E.2d 202.) A criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of the statutes. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180; *People v. Lutz* (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) We therefore see no reason to add after the word "defendant" in the phrase, "and the defendant inflicted severe bodily injury" the phrase, "or someone for whose conduct the

defendant is accountable." Accomplices may not be sentenced to consecutive terms under this provision.

We therefore affirm the defendant's convictions but vacate the sentences and remand for resentencing.

Affirmed in part, vacated in part, and remanded with directions.

CRAVEN and GREEN, JJ., concur.