Docket No. 104679.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JORGE RODRIGUEZ, Appellant.

*Opinion filed June 5, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

At issue in this case is whether section 5–8–1(a)(1)(d)(i) of the Unified Code of Corrections (730 ILCS 5/5–8–1(a)(1)(d)(i) (West 2006)), which provides for a 15-year sentence enhancement for any defendant who commits first degree murder "while armed with a firearm," applies to an unarmed defendant found guilty of first degree murder on a theory of accountability. The circuit court of Cook County held that subsection (i) applied to defendant. The appellate court affirmed. 372 Ill. App. 3d 797. For the reasons that follow, we affirm the judgment of the appellate court.

## BACKGROUND

The facts of this case are not in dispute. On July 29, 2001, defendant was involved in the murder of Mario Avila. As part of a plan, defendant met with Avila under the premise of buying drugs, then brought his co-conspirator, Phonakone Sangathit, over to Avila's car. Defendant, who was unarmed, stood by while Sangathit shot and killed Avila. Defendant was later arrested and charged with first degree murder.

After trial, a jury found defendant guilty of first degree murder under a theory of accountability. The trial judge sentenced him to 35 years in prison for the murder, plus an additional 15 years pursuant to subsection (i) for committing the offense while armed with a firearm.

Section 5–8–1(a) of the Unified Code of Corrections provides,

> "(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> > (1) for first degree murder,
> >
> > > (a) a term shall be not less than 20 years and not more than 60 years, ***
> > >
> > > * * *
> > >
> > > (d)(i) if the person committed the offense while armed with a firearm, 15 years shall be added to the term of imprisonment imposed by the court;
> > >
> > > (ii) if, during the commission of the offense, the person personally discharged a firearm, 20 years shall be added to the term of imprisonment imposed by the court;
> > >
> > > (iii) if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 730 ILCS 5/5–8–1(a) (West 2006).

The appellate court affirmed the trial court. In response to defendant's argument that he should not receive the 15-year enhancement because he was not in physical possession of a firearm during the offense, the appellate court stated, "Had the legislature wished to limit the enhancement in section (i) to persons who personally discharge [*sic*] a firearm, it would have placed the word 'personally' in the language of the statute, as it did in subsections (ii) and (iii)." 372 Ill. App. 3d at 800-81. According to the appellate court, by omitting the word "personally" from subsection (i), the legislature indicated that subsection (i) applied not only to those who are actually armed with a firearm during a first degree murder, but also to defendants found guilty of the same murder through an accountability theory, even if they were unarmed during the offense. This appeal followed.

ANALYSIS

In 1999, the General Assembly added the 15-, 20-, and 25-year firearm sentence enhancements to section 5–8–1 (sections 5–8–1(a)(1)(d)(i) through (a)(1)(d)(iii)) through Public Act 91–404. In the instant case, we must determine whether the legislature intended subsection (i) to apply to defendants guilty of first degree murder through an accountability theory, even if they were not armed during the offense. Our decision will depend on our determination of whether the principles of accountability and common design apply to subsection (i). This is a question of law, which we review *de novo*. *Loman v. Freeman*, No. 104289 (April 17, 2008).

We begin our analysis with a review of the principles of accountability and common design. "Accountability is not a crime in and of itself but, rather, a mechanism through which a criminal conviction may result." *People v. Pollock*, 202 Ill. 2d 189, 210 (2002). Section 5–2(c) of the Criminal Code of 1961 provides that "[a] person is legally accountable for the conduct of another when *** [e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5–2(c) (West 2006).

Our accountability statute does not deviate from the common law rule of common design. *People v. Armstrong*, 41 Ill. 2d 390, 399 (1968). The first decision from this court to discuss the common-design rule was *Brennan v. People*, 15 Ill. 511 (1854). In *Brennan*, we held an accomplice accountable for the murder that his codefendant committed. *Brennan*, 15 Ill. at 516. "If several persons conspire to do an unlawful act, *** [t]he act of one of them done in furtherance of the original design, is, in consideration of law, the act of all." *Brennan*, 15 Ill. at 516. Through the years, the principles of accountability and common design have been utilized by this court to hold defendants involved in the commission of an offense accountable for the criminal conduct of any other codefendant. See *Hamilton v. People*, 113 Ill. 34 (1885) (defendant who took part in a robbery liable for the felony murder committed by his co-conspirators during the robbery); *People v. Tarver*, 381 Ill. 411 (1942) (defendant who had a rifle with him when he left a truck that arrived at the scene of a gang confrontation, and was carrying the rifle when a shooting occurred, held to be a member of the gang and responsible for the acts done in carrying out the common purpose of the gang, namely, murder); *People v. Kessler*, 57 Ill. 2d 493 (1974) (defendant who assisted in the planning of a burglary, then waited in an automobile while his codefendants committed a robbery that escalated into murder, held accountable for burglary and attempted murder).

In *People v. Sangster*, 91 Ill. 2d 260 (1982), we addressed the issue of whether the principles of accountability and common design apply not only to a determination of a defendant's culpability for a criminal act, but also to a calculation of a defendant's sentence in compliance with sentencing statutes. In *Sangster*, the defendant was convicted of murder, armed robbery, and aggravated kidnapping on an accountability theory. *Sangster*, 91 Ill. 2d at 262. The defendant did not physically participate in the crimes, but it was undisputed that he was accountable for what occurred. *Sangster*, 91 Ill. 2d at 262. He was sentenced to consecutive terms of 40, 30, and 15 years pursuant to section 5–8–4(a) of the Unified Code of Corrections, which provided:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the

> nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony *and the defendant inflicted severe bodily injury*, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 1005–8–4(a).

*Sangster*, 91 Ill. 2d at 264.

On appeal, the defendant argued that principles of law mandated that the court construe "the defendant," as used in section 5–8–4, in his favor, with nothing taken by intendment or implication against him. *Sangster*, 91 Ill. 2d at 264. The appellate court agreed with the defendant, stating that it saw "no reason to add after the word 'defendant' in the phrase, 'and the defendant inflicted severe bodily injury' the phrase, 'or someone for whose conduct the defendant is accountable.' " *People v. Sangster*, 95 Ill. App. 3d 357, 364-65 (1981). The appellate court then vacated the defendant's consecutive sentences on the theory that the defendant, who did not physically take part in the crimes for which he was sentenced, did not "inflict severe bodily injury," as required by the sentencing statute. *Sangster*, 95 Ill. App. 3d at 364-65.

We reversed the appellate court. *Sangster*, 91 Ill. 2d at 266. We held that, at the time the legislature enacted the consecutive-sentencing statute, the accountability statute had been interpreted as meaning: " 'where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word "conduct" encompasses any criminal act done in furtherance of the planned and intended act.' " *Sangster*, 91 Ill. 2d at 265, quoting *Kessler*, 57 Ill. 2d at 497. We held that the legislature must be presumed to have known that the accountability statute had been so construed when it enacted the consecutive-sentencing statute, and, therefore, the defendant was accountable for the fact that his accomplices inflicted severe bodily injury upon their victims. *Sangster*, 91 Ill. 2d at 265. We further held, "[h]ad the General Assembly intended that the consecutive sentencing provisions be inapplicable to a defendant found guilty under [a theory of accountability], it would have been a simple matter to provide for an exception as it did in section 9–1(b)(6)(a) of the Criminal Code,"

which provides that a defendant found guilty of murder may be sentenced to death if "the murdered individual was *actually* killed by the defendant" (emphasis added) (Ill. Rev. Stat. 1979, ch. 38, par. 9–1(b)(6)(a)). *Sangster*, 91 Ill. 2d at 265-66.

In *People v. Jordan*, 103 Ill. 2d 192 (1984), defendant Rowe physically restrained a bystander while his accomplice killed the victim. *Jordan*, 103 Ill. 2d at 202-03. Rowe was convicted of felony murder on a theory of accountability. *Jordan*, 103 Ill. 2d at 202. The trial judge found that the crime Rowe took part in was "brutal and heinous" and sentenced him to an extended term of imprisonment pursuant to section 5–5–3.2(b)(2) of the Unified Code of Corrections. *Jordan*, 103 Ill. 2d at 203. Section 5–5–3.2(b)(2) authorized a trial judge to impose an extended-term sentence "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1979, ch. 38, par. 1005–5–3.2(b)(2)). *Jordan*, 103 Ill. 2d at 214. The appellate court affirmed Rowe's sentence. *Jordan*, 103 Ill. 2d at 202.

Before this court, Rowe argued that the plain language of the sentencing statute provided that the defendant himself, and not one for whose conduct he is responsible, must have engaged in the brutal or heinous behavior. *Jordan*, 103 Ill. 2d at 214. Rowe then claimed that his personal conduct, which was limited to restraining a bystander, was not brutal or heinous. *Jordan*, 103 Ill. 2d at 214.

We rejected Rowe's argument and affirmed the appellate court. *Jordan*, 103 Ill. 2d at 215. Applying the reasoning set forth in *Sangster*, we held that the legislature, when it enacted section 5–3–3.2(b)(2), presumably knew that the accountability statute had been interpreted to hold all defendants legally accountable for the conduct of all other defendants participating in a crime, and that "conduct" encompassed any criminal act done in furtherance of the planned act. *Jordan*, 103 Ill. 2d at 214. We further noted that section 5–3–3.2(b)(2) contained no language providing that the defendant himself commit the brutal or heinous acts in order to be eligible for extended-term sentencing. *Jordan*, 103 Ill. 2d at 215. Accordingly, we held that an extended-term sentence pursuant to section 5–3–3.2(b)(2) may be imposed upon a defendant found guilty on an accountability theory. *Jordan*, 103 Ill. 2d at 215.

The State argues that we must apply the reasoning of *Sangster* and *Jordan* to the instant case. According to the State, the legislature enacted subsection (i) with the knowledge that "the accountability statute had been interpreted to hold all defendants legally accountable for the conduct of all other defendants participating in a crime, and that 'conduct' encompassed any criminal act done in furtherance of the planned act." See *Jordan*, 103 Ill. 2d at 214. Thus, the State argues, it must be presumed that the legislature intended subsection (i) to apply to all codefendants found accountable for a first degree murder when any one of them committed the offense while armed with a firearm.

Defendant argues that *Sangster* and *Jordan* are not applicable to the instant case because the statutes at issue in those cases were different from subsection (i). Defendant contends that the statutes in *Sangster* and *Jordan* "altered a defendant's sentence based on the overall harm caused by the offense"; specifically, whether brutal or heinous conduct was committed or whether severe bodily injury occured. *Jordan*, 103 Ill. 2d at 214-15; *Sangster*, 91 Ill. 2d at 264. Defendant contends that, in contrast, subsection (i) "focuses on one particular potential instrumentality of the crime and the personal conduct of the armed individual." Thus, according to defendant, subsection (i) involves a more specific purpose and punishment than the statutes at issue in *Sangster* and *Jordan*.

We agree with the State and find that the reasoning behind our decisions in *Sangster* and *Jordan* applies to the instant case. When a defendant aids or abets another in committing a crime, he is accountable and may be punished for any criminal act any of his codefendant had done in furtherance of the crime, whether that act was inflicting severe bodily injury, committing a brutal and heinous felony, or being armed with a firearm. See *People v. Macias*, 371 Ill. App. 3d 632 (2007) (relying on *Sangster*, appellate court applied subsection (i) to unarmed defendant who ordered the murder of victim). See also *Tarver*, 381 Ill. at 416 ("[a] shot fired by one of the defendants *** was a shot fired by all and all of them must answer for the result"); *People v. Freeman*, 101 Ill. App. 3d 1014, 1017 (1981) (unarmed defendant who participated with an armed defendant in a beating found through principles of accountability to be "armed with a dangerous weapon" and therefore guilty of armed violence).

-7-

Applying the reasoning of *Sangster* and *Jordan* to the instant case, we must presume that the legislature was aware that the accountability statute had been interpreted to hold that when a defendant aids or abets another in committing a crime he is accountable, and may be punished, for any act of his codefendant done in furtherance of the crime. Accordingly, just as *Sangster* held that "the defendant," as used in section 5–8–4, includes "someone for whose conduct the defendant is accountable, we now hold that "the person," as used in subsection (i), includes "someone for whose conduct the person is accountable." Therefore, we find that subsection (i) applies to defendant because he aided and abetted Sanagthit in the first degree murder of Avila, which rendered him accountable for all of Sangathit's criminal acts done in furtherance of that crime, including being armed with a firearm.

Further support for our conclusion can be found in the contrast in statutory language that exists between subsection (i) and sections 5–8–1(a)(1)(d)(ii) and 5–8–1(a)(1)(d)(iii).

Subsections (ii) and (iii) provide that 20- and 25-year sentence enhancements shall apply to the person who "personally discharged" a firearm during a first degree murder. 720 ILCS 5/5–8–1(a)(1)(d)(ii), (a)(1)(d)(iii) (West 2006). The appellate court reasoned that this language limited the application of subsections (ii) and (iii) only to those who actually discharged a firearm during a first degree murder and not to their codefendants who did not discharge a firearm. We agree.

In both *Sangste*r and *Jordan*, we noted that neither of the statutes at issue provided an exception to its application to accountability defendants through limiting language such as is found in section 9–1(b)(6)(a)(i) of the Criminal Code , which restricts the death penalty to only those who "actually killed" the victim (720 ILCS 5/9–1(b)(6)(a)(i) (West 2006)). *Sangster*, 91 Ill. 2d at 265-66; *Jordan*, 103 Ill. 2d at 215. Thus, we held in *Sangster* and *Jordan* that the sentencing statutes were applicable to all codefendants if one of them met the criteria of the sentencing statute. *Sangster*, 91 Ill. 2d at 265-66; *Jordan*, 103 Ill. 2d at 215. In subsections (ii) and (iii), however, the limiting word "personally" is used. We hold that the term "personally," like "actually" as used in section 9–1(b)(6)(a)(i), insulates subsections (ii) and (iii) from the application of the

principles of accountability and common design. In contrast, subsection (i) contains no such limiting language and applies not only to those who are actually armed, but also to those who are accountable for the criminal actions of others who are actually armed.

Finally, we note that the intent of the legislature in enacting section 5–8–1(a) has been codified in section 33A–1 of the Criminal Code, which was enacted in Public Act 91–404 with section 5–8–1(a). Section 33A–1(b)(1), entitled "Legislative Intent," provides:

> "In order to deter the use of firearms in the commission of a felony offense, the General Assembly deems it appropriate for a greater penalty to be imposed when a firearm is used or discharged in the commission of an offense than the penalty imposed for using other types of weapons and for the penalty to increase on more serious offenses." 720 ILCS 5/33A–1(b)(1) (West 2006).

Our decision today comports with this stated intent because it provides an incentive for a would-be criminal to disassociate himself from someone planning on being armed while committing an offense. Such disassociation would deprive the armed individual of the aid or assistance that the unarmed person might otherwise provide. As such, the crime is less likely to occur, and the use of firearms is deterred.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*