2026 IL App (2d) 240611-U
No. 2-24-0611
Order filed March 30, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

ALRAUM WILLIAMS, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable Theodore S. Potkonjak, Judge, Presiding.
No. 22-CF-825

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The jury was not unreasonable when it rejected defendant's claim of self-defense finding him guilty of first-degree murder; defendant's claims of plain error during *voir dire*, closing argument, jury deliberations, and sentencing are not persuasive; however, as the State concedes, the case must be remanded for proper inquiry into defendant's *pro se* post-trial claims of ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant, Alraum Williams, was found guilty of first-degree murder (720 ILCS 5/9-1(a) (West 2022)) and sentenced to forty years' imprisonment. He appeals, claiming that (1) the jury should have accepted his claim of self-defense and it was unreasonable for them not to; (2) the State's closing argument was so prejudicial as to deny him a fair trial; (3) the trial

court plainly erred when it failed to ask a standard pre-trial question to the prospective jurors; (4) the trial court plainly erred when it declined to elaborate in answering a question from the jury about circumstantial evidence; and (5) the trial court relied on an improper factor at sentencing. As we explain, none of those contentions are persuasive. However, defendant claims, and the State concedes, that the trial court failed to conduct a proper preliminary inquiry into defendant's *pro se* post-trial claims of ineffective assistance of counsel. See *People v. Krankel*, 102 Ill. 2d 181 (1984). Accordingly, we affirm in part, vacate in part, and remand for the trial court to conduct the appropriate inquiry into defendant's *pro se* claims.

¶ 3    The parties do not dispute the relevant facts. On February 27, 2022, defendant (then age 17) was sitting in the passenger-side backseat of a gold Chevy Malibu. Defendant's brother, Amireon Williams (then age 19), was seated behind the driver. There were four other young men in the vehicle, so there were six people in the car; Erik Powell was driving, Erik's cousin was in the front seat, and two other young men were seated between Amireon and defendant. Erik stopped for gas at a Citgo station in North Chicago.

¶ 4    The following incident was recorded by the gas station's surveillance cameras. As Erik's car approached the pump, two other young men were walking towards the gas station's store entrance: the victim, Lavon'ta Brown (then age 14), and Jawan Epps (age unknown). Lavon'ta was wearing a blue ski mask over his face as he was walking and was carrying a sling bag on his chest. Both Lavon'ta and Jawan appeared to take notice of the gold car, but continued walking past the car, towards the entrance. Within seconds, Amireon's window was partially rolled down and he presented a pistol and began firing; simultaneously, defendant jumped up on the rear-passenger's side, reached across the roof of the car, and fired his handgun as well. Lavon'ta drew a pistol of his own and attempted to return fire. Jawan can be seen running with a pistol in his

hand, but it is unclear whether he fired it. As defendant and Amireon continued firing, Lavon'ta attempted to retreat around a corner, behind the gas station, but he was still in the line of fire from the car. Lavon'ta was struck multiple times. The car then sped off during the shooting with defendant partially hanging out of the passenger side of the vehicle, his arm flailing, still firing shots outside of the vehicle. The entire incident, from glances through the exchange of gunshots, took place in less than 20 seconds.

¶ 5    A single bullet was found lodged near the trunk of Erik's car. No one inside the vehicle was injured. Meanwhile, Lavon'ta was shot multiple times in his right hand, right knee, and in his chest. According to the pathologist, the bullet that most likely killed him (though many of his wounds were fatal) entered from the back right side of his torso through his right lung and moved up through his chest to the left side of his body, near his heart. Given the trajectory, Lavon'ta would have been leaning forward (or crawling) *away* from the direction of fire when he suffered this wound. After the shooting, Lavon'ta attempted to limp away from the gas station but collapsed in a nearby alley a short distance away. A witness saw a dark-colored handgun in Lavon'ta's right hand after he fell, but by the time police arrived, within minutes of the shooting, Lavon'ta was barely breathing, and his gun had been taken. (The police never located Jawan, and he did not appear to have been injured.)

¶ 6    After fleeing the scene, Erik ultimately lost control of the car and crashed near a hardware store. Everyone in the car then fled on foot. The police found two guns inside the car and arrested four young men inside the store (Erik, Amireon, Orlando Harris, and Nicholas Jones) but they were unable to locate defendant. Defendant was subsequently arrested in August of 2022. Amireon and defendant were charged together, but Amireon's trial was severed from defendant's. At defendant's trial, the jury received instructions on accountability, self-defense, second-degree

murder, and first-degree murder (both intentional and knowing). Illinois Pattern Jury Instructions, Criminal, No. 5.03, 7.01B, 7.05, 7.06 (approved July 18, 2014) (hereinafter IPI Criminal). The jury found defendant guilty of both forms of first-degree murder, and the trial court merged the convictions into intentional murder and sentenced defendant to forty years' imprisonment.

¶ 7    On appeal, defendant's primary contention is that no rational jury could have found him guilty of first-degree murder beyond a reasonable doubt, because the State failed to disprove the reasonableness of his use of deadly force. He requests that we acquit him of first-degree murder based on self-defense, and if not, he asks that we reduce his conviction to second-degree murder based on imperfect self-defense. Defendant points out that Lavon'ta was wearing a ski mask as he approached the gas station and that both Lavon'ta and Jawan "made eye contact with the car" and were "noticeably gripping something in their hands ***." He points out, too, that Erik testified Amireon "warned" Erik not to stop at that particular gas station (without elaborating why). Based on this series of observations, defendant argues that, before anyone's guns were drawn, Lavon'ta and Jawan presented a mortal threat such that *both* he and Amireon were justified in shooting first in self-defense, and that it was unreasonable for the jury to think otherwise. We disagree.

¶ 8    The controlling principles are well established. To raise a claim of self-defense, "the defendant must establish some evidence of each of the following elements: (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable. [Citations.]" *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995). "If the State negates *any one* of the self-defense elements, the defendant's claim of self-defense must fail." (Emphasis in original.) *Id*. at 128. In assessing the sufficiency of the evidence, we ask whether, "after viewing the evidence

- 4 -

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); see also *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "[O]n the issue of self-defense a reviewing court has a duty to reverse the conviction when the evidence is so unsatisfactory as to raise a serious doubt as to the defendant's guilt. [Citations.]" *People v. Evans*, 259 Ill. App. 3d 195, 216 (1994). In this case, we have no such doubts.

¶ 9      Defendant concedes that Amireon presented his pistol first and fired first from the driver's side rear seat, while defendant leapt from cover to fire over the car's roof. Lavon'ta then presented his pistol and returned fire a split second later, but only *after* Amireon began firing and defendant was ready to fire as well. As the jury saw from both the video and still photographs, the scene looked like this:



On the left side of the picture, Jawan can be seen in front of Lavon'ta. Amireon's window is partially rolled down, and defendant is already reaching over the roof with his pistol in hand. The

jury was shown several pictures that zoomed in on a few key features of the scene. Here is a picture of the car, clearly showing Amireon on the left, seated behind the driver, holding a SCCY 9-mm pistol with a black frame and silver slide, that police later recovered inside the vehicle. Defendant can be seen on the right, aiming at Lavon'ta and Jawan over the car's roof. (Defendant's handgun was never recovered.)



The car then went forward and to its right, towards the street, with Amireon and defendant continuing to fire as Lavon'ta turned around and attempted to take cover behind the parked dark-colored SUV seen in the first picture.

¶ 10    As the jury was instructed, in order to find defendant guilty of first-degree murder, it was required to find that the Lavon'ta's killing occurred without lawful justification. 720 ILCS 5/9-1(a) (West 2022). While there is no duty to retreat in this state, it is self-evident that the person claiming self-defense cannot have been the initial aggressor. 720 ILCS 5/7-4(b) (West 2022); see also Wayne R. LaFave, SUBSTANTIVE CRIMINAL LAW § 10.4(e) (3d ed. 2017) ("one who provokes the use of force against himself for the purpose of causing serious bodily harm may not [lawfully]

defend against the force he has provoked"). Likewise, the existence of a common design to kill or cause great bodily harm generally precludes the resort to lawful self-defense.

¶ 11 Under Illinois law, "a person is legally accountable for the conduct of another when *** either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c) (West 2022). The State may prove accountability by showing the defendant's shared criminal intent or participated in a common design. *People v. Fernandez,* 2014 IL 115527, ¶ 13. There is no distinction in liability between the principal and the accomplice when they act together as one. Where, as here, the defendant is charged based on a theory of accountability, a shot fired by one is " 'a shot fired by all and all of them must answer for the result.' " *People v. Rodriguez*, 229 Ill. 2d 285, 294 (2008) (quoting *People v. Tarver*, 381 Ill. 411, 416 (1942)).

¶ 12 The jury here was presented with, and appropriately instructed on, the elements of intentional first-degree murder, second-degree murder, and complete self-defense. When the evidence is viewed in the light most favorable to the State, we cannot say that the jury's first-degree murder verdict was unreasonable. The most compelling facts defendant can point to— Lavon'ta wearing a ski mask, taking notice of the car, and appearing to be clutch an object inside the sling bag—did not *reasonably* indicate a mortal threat *prior* to the shooting. The ski mask was unusual, but functionally, it was not much different than a hooded sweatshirt with the hood up, a scarf, a neck gaiter, or even a protective face mask. To the extent defense counsel notes that Lavon'ta "made eye contact with the car[,]" it is clear from the video that both Lavon'ta and Jawan took notice of the vehicle, but they continued to walk towards the store entrance and *away* from the vehicle. As for Lavon'ta "noticeably gripping something" in the sling bag, that, too, was far

from definitive. At that time, Lavon'ta could have been holding practically anything in his bag. In addition, while Erik testified that Amireon suggested they go to a different gas station, we do not know and cannot speculate why Amireon said that. We note that Erik testified he needed gas for the car and that he did not perceive any risk in stopping at that particular station.

¶ 13    At any rate, defendant's assorted observations fall short of persuading us that the jury's verdict was unreasonable and should be set aside. Defendant appears to have conflated the issue of whether a jury instruction on self-defense and imperfect self-defense was warranted with whether either of those outcomes was the proper verdict. See *People v. McDonald*, 2016 IL 118882, ¶¶ 23-25 (noting that only slight evidence is required to issue a self-defense instruction). Regardless, our Criminal Code provides that a person "is justified in the use of [deadly] force *** only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1 (West 2022). While both Lavon'ta and Jawan may have looked suspicious when they approached the gas station, after taking notice of the car, they were clearly walking *away* from it. This was also not a situation in which defendant *knew* Lavon'ta or Jawan to be violent or menacing. See *People v. Lynch*, 104 Ill. 2d 194, 200-02 (1984). As defendant notes elsewhere in his brief, "[t]here was no evidence that *** anyone knew each other." That fact cuts against the notion that defendant reasonably believed his only (reasonable) option was to use deadly force against a known, imminent, mortal threat. Based on the foregoing, the jury reasonably could have concluded that defendant and Amireon were the initial aggressors, not Lavon'ta and Jawan.

¶ 14    While it is true Lavon'ta had a pistol as well and fired back at the vehicle, that fact alone is not dispositive. An initial aggressor may raise self-defense where they have *withdrawn* from the conflict, and the other party continued it. See 720 ILCS 5/7-4(c)(2) (West 2022). Defendant did

not withdraw, and he could not have been surprised Lavon'ta fired back under the circumstances defendant and Amerion had created. Thus, the exception under which an initial aggressor may still claim self-defense does not apply.

¶ 15    Under the circumstances, it was not unreasonable for the jury to conclude that defendant and Amireon shared the intent or a common design to kill or maim the victims or were the initial aggressors. Consequently, a rational trier of fact could have found that defendant was guilty of first-degree murder, that defendant's use of deadly force was unreasonable, and that a second-degree murder conviction, or an acquittal, simply was not warranted. For the same reasons, we also reject defendant's suggestion that we should use our power under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) to enter a conviction on second-degree murder based on imperfect self-defense. See also *People v. Newbern*, 219 Ill. App. 3d 333, 359 (1991) (repeating the observation that the "statutory scheme for homicide does not readily lend itself to reductions in degree on appeal *** based on a claim of unreasonable belief that self-defense was justified") (internal quotation marks omitted).

¶ 16    We next address defendant's claim of trial error based on the State's closing arguments. There were several instances during closing argument when the prosecution argued to the jury that there was no testimony that defendant ever said Erik should drive away and that "no one gave any testimony about fearing for their life because of concealed hands and a dirty look." Some of these comments were objected to, and the trial court admonished the State that it was close to commenting on the fact that defendant did not testify. Defendant also complains that the State used the words "execute" and "ambush" repeatedly in closing arguments, at one point saying that "an ambush" *** contemplates someone lying in wait for their victim, like an animal waiting for its prey. *** And that's just what defendant did here." This latter comment was not included as a

claim of error in defendant's post-trial motion, but defendant urges that we consider it as plain error and look at the entirety of the State's closing argument as cumulative error.

¶ 17    Having examined the whole of closing arguments, we cannot say that any or all of these statements, whether objected to or not, was so prejudicial as to deny defendant a fair trial. The State's closing arguments were certainly inartful in a few places, but the trial court repeatedly reminded the jury that arguments are not evidence, as did the jury instructions. See IPI Criminal 4th No. 1.03. Not all invective is prejudicial misconduct. See *People v. Potts*, 2021 IL App (1st) 161219, ¶ 291. Here, the State's characterizations were supported by the evidence and by reasonable inferences from the evidence, so we cannot say that defendant would have been acquitted if not for the prosecution's isolated or inappropriate comments. *Cf. id.* ¶ 287 ("[n]ormally, it is *evidence*, not *argument*, that is said to inflame the passions of jurors and thus prejudice the defendant") (emphasis in original; citation and internal quotation marks omitted). The State's closing arguments simply were not plain error.

¶ 18    Next, we address defendant's contention that the trial court erred when it failed to ask the fourth *Zehr* question of the first venire panel of 13 potential jurors. See Ill. S. Ct. R. 431(b) (eff. July 1, 2012); *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). We note that the error was pointed out to the trial court at a sidebar during *voir dire* of the first panel, after which the court said it would read directly from the rule; but in regards to the first panel, the court felt it would be confusing to go backwards, telling the attorneys, "I have never been reversed because of that. I'm just saying." Trial counsel neither objected during jury selection, nor raised the issue in defendant's post-trial motion, so we can only review this claim for plain error.

¶ 19    Before this court defendant argues that "the fourth *Zehr* principle"—that defendant had no obligation to testify—"was particularly crucial here [because] the prosecution later drew attention

to [defendant's decision] not to testify." We disagree. *All* of the *Zehr* principles are crucial, but substantial compliance with Rule 431(b) is all that is required. *Zehr*, 103 Ill. 2d at 477. We agree with defendant that failing to ask the fourth question of the first panel was error, but we also agree with the State that the error was insubstantial. Apart from supreme court rules, the constitution guarantees a fair trial, not a flawless one. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Furthermore, the record shows that, at the close of the trial, all of the *selected* jurors were specifically instructed: "[t]he fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict." IPI Criminal 4th No. 2.04. Moreover, given that the shooting was captured on video, we cannot say that the evidence was closely balanced. *Cf. People v. Sebby*, 2017 IL 119445, ¶¶ 51, 60-61 (where there was no extrinsic evidence and credible accounts on both sides). In short, we are confident that the trial court's failure to ask part of the venire the fourth *Zehr* question played no role in defendant's conviction or tipped the scales of justice against him.

¶ 20 Next, defendant contends that the trial court erred when it declined to give an elaborate answer to the jury's question during deliberations about circumstantial evidence. This claim was not preserved, and we find no plain error. During deliberations, the jury asked: "Could we have clarification of circumstantial evidence and how it might be applied to other mitigating factors? Can circumstantial evidence support other mitigating factors?" The trial court referred the jury to the given instructions and suggested it continue to deliberate. Defendant claims this response was plain error "[because] it provided no specific or accurate clarification to resolve the jury's apparent confusion." Further, defendant suggests, "[because] the court refused to clarify, the jury might not have considered the circumstantial evidence." Defendant also notes that the jury asked for the video of Orlando Jones's interview with the police, which was not admitted as an exhibit at trial,

but two small clips were used on cross-examination to refresh Jones's recollection. Defendant asserts that the request for clarification and the request for Jones's interview demonstrates that the jury was misled in its deliberations on second-degree murder. We disagree.

¶ 21    The jury was instructed that it should consider *all* of the admitted evidence—circumstantial or otherwise—in arriving at its verdict. See IPI Criminal No. 3.02. We find it telling that defendant does not suggest what answer could have been better than the one the trial court gave. In short, we find no error, let alone plain error, in the trial court's response. To the extent defendant claims cumulative trial error based on the closing arguments, the *Zehr* issue, and the response to the jury's circumstantial-evidence question, whether considered individually or collectively, none of these claims meet the high bar of showing a new trial is warranted.

¶ 22    With respect to sentencing, defendant also claims that the court erred by giving improper weight to the fact that defendant's conduct "caused or threatened serious harm." Defendant acknowledges that this claim was also unpreserved but asks us to consider it for plain error or ineffective assistance of counsel. We find no error at all.

¶ 23    The trial court has considerable discretion at sentencing and its decision is entitled to significant deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A factor implicit in the offense should not be used to elevate a sentence, as that factor was already considered when the legislature established the offense's sentencing range. *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). That does not mean, however, that the trial court improperly increased the defendant's sentence simply because it mentioned a fact that is an element of the offense at sentencing. When we consider the hearing as a whole, it is clear that the trial court discussed the harm of the offense in a manner that was natural and appropriate to the offense. The court merely stated that it was "obvious" the defendant's conduct caused serious harm. The court then made detailed findings in aggravation and mitigation

based on the circumstances of defendant's upbringing, including his youthfulness, impulsivity, history of gun possession, and lack of a father figure—all traits the court found defendant shared with the victim. Contrary to defendant's assertion, the record shows the court's comments to have been thorough, sincere, and thoughtful. Upon careful review, there is no indication that the court considered an improper factor when determining defendant's sentence, much less that it gave improper weight to a factor inherent in the offense. Accordingly, we determine there was no reversible error in defendant's trial or sentence.

¶ 24    We now address the issue that requires a limited remand. After the verdict, defendant filed a *pro se* post-trial motion alleging ineffective assistance of counsel pursuant to *Krankel*, 102 Ill. 2d 181. Specifically, defendant asserted that trial counsel failed to admit Orlando Jones and Erik Powell's interrogation videos or call the detectives who interviewed them as witnesses. Defendant also asserted that counsel should have requested a jury instruction on serious provocation. The trial court judge acknowledged receipt of the motion but never conducted a preliminary inquiry into defendant's *pro se* claims of ineffective assistance. Instead, the court told defendant it would only consider his claims *if* they were adopted by counsel. That was a mistake, as all defendant was required to do was to bring his allegation to the court's attention. See *People v. Ayres*, 2017 IL 120071, ¶ 11; *People v. Moore*, 207 Ill. 2d 68, 79 (2003). The State confesses error and we accept the concession.

¶ 25    We vacate the order denying defendant's motion for new trial and remand for the limited purpose of allowing the trial court to conduct a proper preliminary inquiry. If the trial court determines that defendant's *pro se* ineffective-assistance claims lack merit or pertain only to matters of trial strategy, the court may then deny the motion and leave standing defendant's convictions and sentences. *Moore*, 207 Ill. 2d at 81. However, if the allegations show possible

neglect of the case, then the trial court should set the matter for a second stage *Krankel* hearing, where the defendant can proceed with either appointed or retained counsel, and ultimately, the court can determine if a new trial is warranted. See generally *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43. With the exception of that issue, we otherwise affirm the judgment of the circuit court of Lake County.

¶ 26     Affirmed in part and vacated in part; cause remanded.